## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOSE JULIAN CRUZ-BERRIOS**

*Plaintiff,*

v.

**PUERTO RICO DEPARTMENT OF CORRECTIONS AND REHABILITATION;**
**EINAR RAMOS LOPEZ,** in his official capacity as Secretary;
**LESTY BORRERO RIVERA** in his personal and official capacities as an officer (Warden of the Maximum Security Annex 292)    at the Puerto Rico Department of Corrections and Rehabilitation; Jane Doe (his wife), and the legal conjugal Partnership composed by both;
**VICTOR M. RIVERA SIERRA,** in his personal and official capacities as the Sub Secretary of the Rico Department of Corrections and Rehabilitation; Jane Doe (his wife), and the legal conjugal Partnership composed by both;
**HECTOR SANTIAGO,** in his personal and official capacities as an officer at the Puerto Rico Department of Corrections and Rehabilitation; Jane Doe (his wife), and the legal conjugal Partnership composed by both;
**DAVID AGUILA RODRIGUEZ,** in his personal and official capacities as an officer at the Puerto Rico Department of Corrections and Rehabilitation; Jane Doe (his wife), and the legal conjugal Partnership composed by both;
**JOSE M. MEDINA RUIZ** in his personal and official capacities as an officer at the Puerto Rico Department of Corrections and Rehabilitation; Jane Doe (his wife), and the legal conjugal Partnership composed by both;
**JAVIER LUNA LOPEZ** in his personal and official capacities as an officer at the Puerto Rico Department of Corrections and Rehabilitation; Jane Doe (his wife), and the legal conjugal Partnership composed by both;
**FERNANDO TROCHE RIVERA** in his personal and official capacities as an officer at the Puerto Rico Department of Corrections and

Civil No. 16 - 3155 (PAD)

(_____)

**Trial by Jury Requested**

RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, PR
2016 DEC 16  PM 4: 44

1

Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**EMMANUEL TIRADO CARRILLO** in his personal and
official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**MARCOS CRUZ DIAZ** in his personal and
official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**CHRISTIAN HERNÁNDEZ** in his personal and
official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**JOSÉ M. GARCÍA** in his personal and
official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**PABLO ANDUJAR ANDUJAR,** in his personal
and official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**JAVIER VARGAS CASILLAS,** in his personal
and official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**SERGIO AQUINO CURBELO,** in his personal
and official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**PEDRO NIEVES MERCADO,** in his personal
and official capacities as an officer at the Puerto
Rico Department of Corrections and
Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**FRANCISCO MATIAS RAMOS,** in his personal
and official capacities as an officer at the Puerto
Rico Department of Corrections and

2

Rehabilitation; Jane Doe (his wife), and the legal
conjugal Partnership composed by both;
**WANDA MONTAÑEZ SANTIAGO**, in her official
capacity as Warden of Bayamon 501;John Doe
(her husband), and the legal conjugal partnership
composed by both;
**WALTER SOTO HERNÁNDEZ** in his official
capacity as Warden of Correctional Complex 448;John Doe
(his wife), and the legal conjugal partnership
composed by both;
**CARLOS GARCÍA BERMUDEZ**, in his official capacity
as an officer (Lieutenant) at the Puerto Rico
Department of Corrections and Rehabilitation;
Jane Doe (his wife), and the legal conjugal
Partnership composed by both;
**WILFREDO JIMENEZ RODRIGUEZ**, in his official
capacity as an officer (Sargent) at the Puerto Rico
Department of Corrections and Rehabilitation;
Jane Doe (his wife), and the legal conjugal
Partnership composed by both;
**VILMA RIVERA RAMIREZ**, in her official capacity as
Nurse (# D1770) at Bayamon 501; John Doe (her husband),
and the legal conjugal Partnership composed by both;
**MRS. MONSERRATE GARCÍA**, in her official capacity as
the Supervisor at the Medical Ward at Bayamon 501; John Doe
(her husband), and the legal conjugal Partnership composed
by both; **CORRECTIONAL HEALTH SERVICES
CORP.; MANUEL CHIQUILINI,** Chief Executive Officer;
**DR. GLADYS QUILES** in her personal and official
capacities as a medical doctor at Institutional Complex 292,
Bayamon Correctional Institution;

**JOHN DOE; RICHARD DOE; JANE DOE.**

*Defendants*

---

## COMPLAINT

**TO THE HONORABLE COURT:**

Come now PLAINTIFF, José Julian Cruz Berrios, by himself in ***Forma Pauperis*** and very

respectfully state, allege and pray as follows:

3

## 1. __INTRODUCTION__

1.1 This cause of action arises under United States Code Title 42, Section 1983, 42 U.S.C. § 1983, wherein PLAINTIFF José Julian Cruz Berrios, (from here on Mr. Cruz) seek to redress a deprivation under color of law of a right, privilege, or immunity secured him by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; by the Constitution of the Commonwealth of Puerto Rico, as well as under Puerto Rico's general negligence statute, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

1.2 Mr. Cruz seeks injunctive relief, for the depravation of his constitutional right to adequate medical treatment and to be free of wanton infliction of his pain and suffering which in turn is considered infliction of cruel and unusual punishment. He also seeks monetary damages, for physical and emotional suffering, caused by that conduct and/or omissions.

1.3 Among other things, Mr. Cruz alleges that the medical treatment or lack thereof while under the custody and care of the defendants constitutes medical malpractice under article 1802 of the Puerto Rico Civil Code of 1930 insofar as the acts and omission of the defendants are a breach of their legal duties to provide him adequate medical treatment. As more fully set forth below, the defendants breached said duty by failing to use the same degree of expertise and/or consideration as could reasonably be expected of typical competent medical practitioners and correctional officers.

1.4 ___Injunctive relief is necessary___ in this case to prevent irreparable and irreversible harm to Mr. Cruz.

1.5 Mr. Cruz seeks redress for the deprivation, under color of state law, of his civil rights, pursuant to *"The Rehabilitation Act of 1973"*, 29 U.S.C. § 794; and for the discrimination on the basis of disability in violation of *__The American with Disabilities Act of 1990__*, 42 U.S.C. § 12132.

4

## 2. JURISDICTION

2.1 This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because: (1) this action arises under the Constitution and laws of the United States, pursuant to; and over the federal questions generally pursuant to 28 U.S.C. § 1343(a)(4); (2) this action seeks to redress the deprivation, under color of state law, of Plaintiff' civil rights, pursuant to 28 U.S.C. § 1343 (a)(3); (3) Plaintiff alleges discrimination on the basis of disability in violation of 42 U.S.C. § 12132; (4) Plaintiff alleges that Defendants deprived him of his rights, privileges, or immunities secured by the Constitution and Federal laws, specifically the rights guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 and 1988.

2.2 This action is also brought under Article II, Sections 1, 7 and 8 of the Constitution of the Commonwealth of Puerto Rico, as well as under Puerto Rico's general negligence statute, Article 1802 and 1803 of the Puerto Rico Civil Code of 1930, 31 P.R. Laws Ann. §§ 5141-5142.

2.3 This Honorable Court is also authorized to *order declaratory and injunctive relief* pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

2.4 Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). Venue is proper in the District Court for the District of Puerto Rico because all the parties are resident of and domiciled in Puerto Rico, and because all the actions, omissions and conduct to which this case refers took place or were initiated within the Commonwealth of Puerto Rico.

2.6 This Honorable Court may exercise supplemental jurisdiction over Plaintiff's Commonwealth of Puerto Rico statutory and constitutional claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same nucleus of operative facts as Plaintiff's federal claims.

### 3. PARTIES

**A. Plaintiff**

3.1   Plaintiff, **Mr. Cruz**, is a sixty one (**61**) years old inmate, who is a resident of Bayamón, Puerto Rico, who during the time periods discussed in this Amended Complaint has been residing at the Puerto Rico Department of Corrections and Rehabilitation's (hereinafter "DoC") Institutional Complexes 501 in Bayamon ("Prison 501").   Mr. Cruz has been incarcerated since November 6, 2001 and his sentence entails life imprisonment.

**B. Defendants**

3.2 Defendant **Einar Ramos Lopez** is the Secretary of the Puerto Rico DoC. He is being sued in his official capacity for purposes of injunctive relief. Defendant is responsible for establishing and implementing policies, practices and procedures designed to assure that Correctional Officers have adequate training and supervision; and to assure the safety and well-being of inmates; including that of the herein Plaintiff, as an inmate, at Bayamón Correctional facility. Defendant Ramos Lopez failed to keep Plaintiff safe from indiscriminate physical abuse and punishment while in their custody and care despite awareness of the wrongful and illegal conduct of Defendants PRDoC Officers.

3.3 Defendant, **Victor M. Rivera Sierra** is, upon information and belief, the Sub. Secretary of the DoC. In the Secretary's absence, Defendant is responsible for establishing and implementing policies, practices and procedures designed to assure that Correctional Officers have adequate training and supervision; and to assure the safety and well-being of inmates; including that of the herein Plaintiff, as an inmate, at Bayamón Correctional facility. He is being sued in both his individual and official capacities for Defendant Rivera Sierra failed to keep Plaintiff safe as he

failed to inform or act against the indiscriminate physical abuse and punishment while in their custody and care despite awareness of the wrongful and illegal conduct of Defendants PRDoC Officers.

3.4 Defendant **Lesty Borrero** is, upon information and belief, a correctional officer working (Warden of the Maximum Security Annex 292) from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for the conduct, misconduct, lack of training and supervision, failure to inform or act against the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.5 Defendant **Hector Santiago** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, creating a dangerous confinement environment for Plaintiff while fostering, promoting and permitting other inmates to attack Plaintiff. Conduct, misconduct that caused grave physical injuries to plaintiff, and exposed Plaintiff to the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.6 Defendant **David Aguila-Rodriguez** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, creating a dangerous confinement environment for Plaintiff while fostering, promoting and permitting other inmates to attack Plaintiff. Conduct, misconduct that caused grave physical

7

injuries to plaintiff, and exposed Plaintiff to the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.7 Defendant **Jose M. Medina Ruiz** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities. for the conduct, misconduct, failure to inform or act against the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.8 Defendant **Jaiver M. Luna Lopez** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for creating a dangerous confinement environment for Plaintiff by filing frivolous disciplinary claims against him. Defendant Luna Lopez asserted that the filing of the disciplinary claims against plaintiff were suggested or ordered to him by co-defendants Héctor Santiago y David Aguila Rodríguez. This negligence ultimately lead to the imposition disciplinary sanctions that plaintiff served by the time they were finally dismissed. This conduct, misconduct caused severe mental and emotional suffering and continued to expose Plaintiff to the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody and other damages as hereinafter asserted and claimed.

3.9 **Fernando Troche Rivera** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his personal and official capacities. Defendant, Troche Rivera, negligently and without regard for human life, caused grave physical injuries to plaintiff, as well as severe mental and emotional

8

suffering and other damages as hereinafter asserted and claimed.

   3.10 **Emmanuel Tirado Carrillo** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for creating a dangerous confinement environment for Plaintiff by filing frivolous disciplinary claims against him, conduct, misconduct that caused severe mental and emotional suffering and continued to expose Plaintiff to the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that ultimately lead to the grave physical injuries suffered by plaintiff, and other damages as hereinafter asserted and claimed.

   3.11 **Marcos Cruz Diaz** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, engaging in conduct, misconduct that caused severe mental and emotional suffering to plaintiff, as well as and other damages as hereinafter asserted and claimed.

   3.12 **Christian Hernández** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities. Defendant, Christian Hernández, negligently and without regard for human life, beat Plaintiff causing grave physical injuries to plaintiffs, as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

   3.13 **José M. García** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for creating a dangerous confinement environment for Plaintiff by filing frivolous disciplinary claims against Plaintiff, conduct, misconduct that caused severe mental and emotional suffering and continued to expose Plaintiff to the indiscriminate physical abuse and

9

punishment suffered by Plaintiff while in their custody, negligence that ultimately lead to the grave physical injuries suffered by plaintiff, and other damages as hereinafter asserted and claimed.

3.14 Defendant **Pablo Andujar Andujar** is, upon information and belief, a correctional officer (sergeant) working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his personal and official capacities for the conduct, misconduct, failure to inform or act against the indiscriminate physical abuse and punishment suffered by Plaintiff, at the hands of correctional officer under his supervision, while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.15 Defendant **Jaiver Vargas Casillas** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, beat Plaintiff causing grave physical injuries to plaintiffs, as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

3.16 Defendant **Sergio Aquino Curbelo** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, beat Plaintiff causing grave physical injuries to plaintiffs, as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

3.17 Defendant **Pedro Nieves Mercado** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, beat Plaintiff causing grave physical injuries to plaintiffs, as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

3.18 Defendant **Francisco Matias Ramos** is, upon information and belief, a correctional officer working from the PRDoC's at the Bayamon Correctional Complex. He is being sued in both his individual and official capacities for negligently and without regard for human life, beat Plaintiff causing grave physical injuries to plaintiffs, as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

3.19 Defendant **Wanda Montañez Santiago** is, upon information and belief, the Warden of Bayamon Correctional Complex 501; she is being in both her individual and official capacities for the conduct, misconduct, lack of training and supervision, failure to inform or act, as Warden of Bayamon 501 Correctional Complex, against the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, and care despite awareness of the wrongful and illegal conduct of Defendants PRDoC Officers. Negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.20 Defendant, **Walter Soto Hernández**, is, upon information and belief, the Warden of Correctional Complex 448, He is being sued in both his individual and official capacities for the conduct, misconduct, lack of training and supervision, failure to inform or act, as Warden of Correctional Complex 448, against the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, and care despite awareness of the wrongful and illegal conduct of Defendants PRDoC Officers. Negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.21 Defendant **Carlos García Bermudez** is, upon information and belief, an officer (Lieutenant) working from the PRDoC's at the Bayamon Correctional Complex, he is being sued in both his individual and official capacities for the conduct, misconduct, and denial of services that have been part of the indiscriminate mental, physical abuse and punishment suffered by

Plaintiff while in their custody. Defendant García Bermudez denied access to walk assist devices (wheelchair, four prone cane) when requested by plaintiff despite his disability. Defendant García Bermudez with knowledge of plaintiff's disability subjected plaintiff to walk while handcuff and in shackles for a significant distance in order for plaintiff to receive his insulin treatment. This aggravated the condition of the plaintiff's already injured and swollen extremities; negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.22 Defendant **Wilfredo Jimenez Rodriguez** is, upon information and belief, an officer (Sargent) working from the PRDoC's at the Bayamon Correctional Complex, he is being sued in both his individual and official capacities. for the conduct, misconduct, failure to inform or act against the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.23 Defendant **Vilma Rivera Ramirez**, is, upon information and belief, the Nurse (#D1770) in charge of medication and treatment at Bayamon Correctional Complex. She is being sued in both her individual and official capacities for failing to administer Plaintiff's medication according to established medical practice, for the conduct, misconduct, while treating and handling Plaintiff as a patient that caused injuries to Plaintiff, as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

3.24 Defendant **Mrs. Monserrate García**, is, upon information and belief the Supervisor at the Medical Ward at Bayamon Correctional Complex. She is being sued in both her individual and official capacities for the conduct, misconduct, lack of training and supervision, failure to inform or act against the inhumane treatment suffered by Plaintiff at the hands of the Vilma Rivera

Ramirez, a nurse under her supervision, negligence that caused severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed., as well as severe mental and emotional suffering and other damages as hereinafter asserted and claimed.

3.25 Defendant **Manuel Chiquilini** is, upon information and belief, the Chief Executive Officer of Correctional Health Services Corp. He is being sued in both his individual and official capacities for the conduct, misconduct, lack of training and supervision, failure to inform or act against the indiscriminate physical abuse and punishment suffered by Plaintiff while in their custody, negligence that caused as severe mental and emotional suffering and damages to plaintiff as hereinafter asserted and claimed.

3.26 Defendant **Dr. Gladys Quiles** is, upon information and belief, a medical doctor working from the PRDoC's located in Bayamon. She is sued in both her individual and official capacities for failing to administer Plaintiff's medication according to established medical practice, and failure to inform or act against the indiscriminate physical abuse and punishment suffered by Plaintiff while in custody of Defendants. Conduct, misconduct and negligence that caused severe mental and emotional suffering as well as other damages to plaintiff as hereinafter asserted and claimed.

3.27 Defendants **John Doe**, **Richard Doe** and **Jane Doe** are person of legal age whose names are unknown at this time and who are responsible, in both their individual and official capacities, for the constitutional violations and damages caused to Plaintiff. Once their identity is ascertained they will be included in this suit.

3.27 Hereinafter, all defendants identified in paragraphs 3.2 through 3.27 shall be referred to collectively as the "defendants."

### 4. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

The allegations in this section are alleged on Plaintiffs' information and belief and on that basis are alleged to be true.

### I.    BACKGROUND OF MR. CRUZ'S CONDITION

4.1 Mr. Cruz is a *type-2 diabetes patient* and must receive five (5) doses of insulin divide in three (3) sections a day, *via* injection, at the prisons medical ward. That medical condition has also caused him *advanced diabetic neuropathy*. Said conditions were diagnosed by physicians working for and/or on behalf of the PRDoC, and <u>all</u> of the aforementioned co-defendants and medical staff at Prison 292 and prison 501 have personal knowledge of the fact that Mr. Cruz suffers from the aforementioned medical conditions, and of the fact that medical services are required to treat his illness, specifically insulin administration twice (2) a day.

4.2 Mr. Cruz's five (5) doses of insulin are supposed to be administered in the morning and late afternoon, between half an hour and an hour before or after meals.

4.3 Mr. Cruz's condition also requires a *low sodium "diabetic diet"* of 2200 calories a day, prepared for insulin dependent patients. It must include three (3) fruit snacks.

4.4 Mr. Cruz's *diabetic neuropathy*, caused by years of suffering from diabetes, is so advanced to the point of *affecting his lower extremities and ability to walk unassisted*. A four (4) *pronged cane is necessary* in order for Mr. Cruz to walk.

4.6 Mr. Cruz has been antagonized and humiliated by the acts of some correctional officers and staff. For example, *Nurse Vilma Rivera Ramirez* who *has continuously exhibit a pattern of administering Mr. Cruz's insulin outside of schedule contrary to the attending physician's order and stablished medical practice for such patients*.

4.7 Nurse Vilma Rivera Ramirez has also used her position as the Nurse in charge, to

engage in a "torture like conduct" towards Mr. Cruz whenever she has had to administer his insulin (using threatening and derogatory language when interacting with Mr. Cruz, acting in a manner inconsistent with the recognized standard of care when *inserting needles and taking blood samples from Mr. Cruz causing bruises and unnecessary pain to the petitioner*).

4.8 The mere thought that she will be the one attending him puts Mr. Cruz in a state of fear. Nurse Vilma Rivera's actions have clearly lead Mr. Cruz to suffer from a *continuous emotional distress*. A correctional Officer by the last name Rodríguez, who is assigned to the Medical and Medication Administration Area, has personal knowledge the mistreatment and humiliation Mr. Cruz receives from Nurse Vilma Rivera Ramirez while trying to have his insulin treatment administered.

*Mr. Cruz has not been receiving of his insulin treatment and injections as ordered by his attending physicians*. This is not the first time that this has occurred and his doctor, including *Dr. Florentino Figueroa and Dr. Esther Rodríguez (Psychologist), have had knowledge of the humiliation and inhumane treatment Mr. Cruz has endure at the hands of the Prison 501's medical staff*, in particular Nurse Vilma Rivera Ramirez (the nurse in charge of medication and treatments) and how it has affected Mr. Cruz's mental and physical health.

Doctor Florentino Figueroa exposed the situation to Mrs. Gladys Quiles in communication sent via email and requested an urgent meeting to discuss. Nevertheless, more than a month went by and Mr. Cruz presented and administrative claim but the situation remained unattended. The doctors have had no other choice but to recur to unconventional treatments to try to stabilize him.

4.6 *Mr. Cruz has almost died on two (2) occasions*, since October of 2015 due the PRDoC's and Correctional Health Services Corp. ("CHSC") *failure to administer his insulin injection*s. It is happening again, and this injunctive relief is necessary to save his live.

15

## II.   ADDITIONAL AND SPECIFIC FACTUAL ALLEGATIONS

4.7 During September of the year 2014, Mr. Cruz received a haircut and shave at the Bayamon Correctional Complex 292's barber shop. Unfortunately, as a result he acquired a skin fungus on his face which caused his facial skin to bleed and hurt.

4.8 Due to that condition, on October 10, 2014, he was seen by a medical doctor named Abnel Crespo-Ojeda, MD, at the Prison 292 medical ward, who issued a medical order that he could not shave until a dermatologist examined him. That medical order was identified as "Recetario A – 51412." The defendants were notified of that medical order and the Warden himself, Mr. Lesty Borrero Rivera, told Mr. Cruz that he should follow the doctor's order.

4.9 On October 10, 2014, the co-defendants (despite the doctor's instructions) issued an internal order that Mr. Cruz was not to receive medical service of any kind unless he was clean-shaven. That despite the fact that the fungus was eating away his skin.

4.10 That October 10th internal order deprived Mr. Cruz of the following: *his two (2) daily doses of insulin, sick-call services, access to a mental health specialist, appointments with his psychiatrist and psychologist, appointments with his medical doctors (internist and gastroenterologist) and all the routine blood tests, all of which had been previously scheduled.*

4.11 Between October 10th and November 19th, Mr. Cruz was not permitted to step foot outside his cell, during that time Mr. Cruz was not provided the doctor's recommended daily dosage of insulin.

4.12 Between October 10th and November 19th, every morning a corrections officer would appear at Mr. Cruz' cell and ask if he was ready to go to the medical ward to receive his insulin. However, as soon as they noted that he was not completely clean shaven, they would simply refuse to take him to the medical ward to receive his insulin (insulin is only administered in the medical

16

ward). While on this 24 hours lock down Mr. Cruz was deprived of his right to have access to medical treatment and to all other services related to his medical conditions.

4.13 Upon denying Mr. Cruz access to the medical ward, the co-defendants would hand Mr. Cruz a standard "A2086" waiver form from the CHSC titled "Rehuso de Servicios de Salud," which means refusal to receive health services, and ordered him to fill it out. The PRDoC and CHSC's intended to create a paper trail suggesting that he was "refusing" medical attention.

4.14 Each day, Mr. Cruz filled out the document as ordered by the co-defendants. However, what he did was write that he was being denied access to the medical ward. CHSC's file on Mr. Cruz should contains all of those documents.

4.15 Mr. Cruz filed approximately nineteen (19) "sick call" requests with the PRDoC seeking to resolve the problem. Unfortunately, to no avail.

4.16 Those filings caused his relationship with the defendants to deteriorate to such an extent that certain prison guards and staff set up an agenda to make an example of him and break his spirit.

4.17 As a matter of example, co-defendants Cpt. David Aguila Rodríguez and Lt. Hector Santiago, not satisfied with depriving Mr. Cruz of medical attention, also filed twenty seven (27) frivolous administrative complaints against Mr. Cruz. Their intention was to cover up their conduct. Each and every one of those complaint was ultimately dismissed.

4.18 The defendants have perused an agenda of humiliating and harming Mr. Cruz in order to cause him psychological damage and make him submissive. All they are doing is harming a frail man.

4.19 Dr. Gladys Quiles further denied Mr. Cruz his insulin as she supported the other defendants' conduct and agenda. Mr. Cruz filed five (5) administrative remedies seeking that Dr.

17

Quiles provide him with his daily doses of insulin. Also, to no avail.

4.20 On October 30, 2014, Mr. Cruz had to be taken to the prison's medical ward because his blood sugar levels were over 400 and he fainted. That was caused by the defendants' acts of depriving him of insulin. He was immediately administered insulin at that time and his condition was so serious that he had to be transferred to the emergency room at the Correctional Medical Center (Centro Medico Correcional) at Bayamón Correctional facilities.

4.21 During the trip to the emergency room and while at the hospital, co-defendants Vargas Casillas, Nieves Mercado, Matias Ramos and Aquino Curbelo, dragged Mr. Cruz around by handcuffs and shackles, and at one point even covered his face with a sweat-shirt in order to cause him pain and suffering by simulating that he was being smothered. They engaged in that conduct because they were angry because they were ordered to take him to the hospital.

4.22 The co-defendants were notified of that situation *via* a letter dated November 23, 2015.

4.23 The hospital staff noted the abuse and due to the cuffs and shackles being closed tight to his skin even had to attend the cuts on his wrists and legs. They treated the case as a police brutality case. After he was attended and his sugar level stabilized, he was sent back to the prison with a medical order to provide him with insulin. However, again, as many times before, insulin was denied on a timely manner.

4.24 On **February 1, 2016**, Mr. Cruz woke up at around 6:00 a.m. and around 7:00 a.m. he tried heading to the medical ward of Prison 501 to receive his daily dosage of insulin. Once at the exit, *a correctional officer told Mr. Cruz that he had to be handcuffed before beginning the three hundred and fifty (350) meters walk that separate the cell area from the medical ward*.

4.25 *Mr. Cruz promptly objected* such order because *he needed to use his four (4) pronged cane – as ordered by doctors –* to walk and being handcuffed implicated that Mr. Cruz would have

18

had to place the cane between his feet instead of his right hand side where he really needs support. Thus, he can fall.

4.26 Mr. Cruz requested to speak to Sargent Meléndez whom days before had seen Mr. Cruz feet conditions and ordered that Mr. Cruz be allowed to walk to the medical ward without being handcuffed. *Sargent Meléndez, informed Mr. Cruz that his superior officer (Teniente García) had issued an order indicating that Mr. Cruz will have to walk to the medical ward while handcuffed in order to have his insulin administered*.

4.27 Mr. Cruz informed Sargent Meléndez that he will no longer object to being handcuffed, but *requested to be taken to the medical ward in a wheelchair due to his deteriorating feet condition and because walking while being cuffed meant having to position the cane between his feet causing improper balance which would worsen Mr. Cruz's already advanced diabetic neuropathy*. Sargent Meléndez returned five (5) minutes later and informed Mr. Cruz that there were no wheelchairs available at Prison 501, and that if he wanted to have the insulin administered he would have to walk the three hundred and fifty (350) meters handcuffed, with or without his cane.

4.28 *Mr. Cruz could not make it to the medical ward that morning and ended up fainting and falling on the floor semi unconscious*. An inmate, who was doing the cleaning duties, nicknamed Omar "Ponce" found Mr. Cruz laying down on the floor and called for the correctional officers to come aid Mr. Cruz.

4.29 Sargent Meléndez, whom had previously denied Mr. Cruz insulin administration, had to arrange Mr. Cruz transfer to the medical ward. *After having spent close to an hour semi unconscious on the floor, a doctor and a nurse named Álvarez arrived at Mr. Cruz's cell and called for his immediate transfer to the emergency area of the Correctional Medical Center*

(Centro Médico Correcional). However, the doctor and the named nurse did not provide first aid nor checked Mr. Cruz' blood sugar levels.

4.30 Mr. Cruz was taken to the control gate by Omar and another inmate named Bryan (cell 209). Mr. Cruz remained laying down on the floor in front of the control gate for about thirty (30) minutes until an ambulance from the Correctional Medical Center (Centro Médico Correcional) arrived.

4.31 At the emergency room, *Mr. Cruz* was attended by Doctor Campos, who checked Mr. Cruz's vital signs and found his *blood sugar levels surpassed the six hundred (600) mark*. Doctor Campos ordered for a serum and insulin to be immediately administered. Mr. Cruz remained under such treatment until 7:00 p.m. Once stabilized, Mr. Cruz was released and sent back to Prison 501.

4.32 On *February 2, 2016*, the defendants continued with their abusive attitude towards Mr. Cruz, *again denying him access to the medical ward as he tried to explain that due to his health condition he could not walk to the referred section in handcuffs*.

4.33 *That morning* Mr. Cruz was found unconscious by the inmate named Omar. The responding officer alerted through radio that *Mr. Cruz was found bleeding from the head and convulsing on the floor*. An hour had elapsed before medical staff responded to the "sick call" and arrived at Mr. Cruz' cell. Sargent Meléndez informed the doctor that Mr. Cruz could not be moved out of his cell until the ambulance arrived. The doctor then left without providing any help and Mr. Cruz remained bleeding out on the floor.

4.34 Mr. Cruz was assisted by several doctors (Doctors Chévere y Jefrey González) at the emergency room of the Correctional Medical Center (Centro Médico Correcional) and *had to remain there between February 2nd and 9th, 2016*. At the emergency room he *received insulin up to five (5) times a day*.

20

4.35 He subsequently had to be transferred to the infirmary area at Correctional Complex 448, where Mr. Cruz received insulin twice a day in a timely manner as required. *He had to be housed at Correctional Complex 448 between February 9th and March 2nd, 2016*.

4.37 While at the medical dorms area on February 12, 2016, at around 7:00 p.m., Mr. Cruz began to feel sick for which a dextrose exam was performed reveling that his blood sugar level was at 581. Mr. Cruz requested to be given some insulin but the staff informed him that no doctor was available to give such order and that he will have to wait until next day.

4.38 *Mr. Cruz began to feel worse* and had to be taken to the CMC emergency room at Bayamón Correctional Facility. *The attending Doctor gave Mr. Cruz a dose of natural insulin* and ordered for Mr. Cruz to be transferred back to the medical area of Correctional Complex 448. It was also ordered for Mr. Cruz to be provided with subsequent insulin administration. The order specifically provided that another dextrose exam be performed and depending on the results to administer insulin as follows: "400 in his sugar blood level/ 8 units of insulin, 300 in his sugar blood level/ 4 units of insulin, less than 300 in his sugar blood level / no insulin".

4.39 Mr. Cruz was released from the Correctional Hospital at 8:30 p.m. but at 11:30 p.m. while he was still awaiting to be transferred back to Institution 448, *none of the Doctor's orders were followed*. Mr. Cruz began to feel sick again and requested to be taken back to the emergency room in the Correctional Hospital so the order to administer insulin be carried out as the Doctor ordered. To no avail.

4.40 Mr. Cruz began to feel even worse than before and other inmates began to call the attention of guards. Officer Marcos Cruz Diaz was the first to show up, left and returned with another Officer that had his whole arm tattooed, badge 13056.

21

4.41 *Both Officers approached Mr. Cruz's wheelchair and pulled him abruptly, forcing him and dragging him into a confine cell. Mr. Cruz felt very sick to walk and said Officers began to assault Mr. Cruz for no apparent reason.*

4.42 An unidentified Officer arrived and ordered the other two Officers to stop beating Mr. Cruz. 30 minutes later an Officer from the State Police arrived at the Institution 448 to gather information pertain a complaint for an alleged assault on the prison guards.

4.43 *State Officer Collazo, badge 34659, assigned to the Bayamón North Precinct ordered the Correctional Officers involved in beating down Mr. Cruz to take him to the Emergency area so that he could receive medical attention due to the seriousness of the traumas caused by the blows to the face and head. State Officer Collazo informed Mr. Cruz that to his personal knowledge the Correctional Officers were providing him with erroneous, faulty or incorrect information and that was not to present charges as alleged.*

4.44 Mr. Cruz was attended to take care of the traumas cause earlier by the beating he received at the hands of the Correctional Officers and was provided with the ordered insulin dose. Mr. Cruz was released from the Emergency area at 1:30 a.m., February the 13, 2016. Mr. Cruz was then transferred back to the Medical Dorm area of Correctional Complex 448.

4.45 *While at the infirmary, on February 25th, a prison guard named Jonathan Hernandez, without authorization or apparent reason entered Mr. Cruz' room and beat him while he was resting in his sick bed. Mr. Cruz had to be attended for police brutality. That guard was not even assigned to that section of the complex. That case is currently being investigated.*

4.46 **On March 2nd** *he was transferred back to Prison 501 and he was housed in the prison's maximum security segregation unit.* Specifically, Prison 501's Section M, Cell # 1. It is important

22

to point out that such section and cell are the equivalent of a *"solitary confinement"*. That Cell # 1's door is sealed off with glass, except for a small space to insert a food tray. *It did not have any ventilation and no air-conditioning. Further, there was no fresh running water available in the cell either, since the faucet was broken.*

4.47 **Plaintiff, Mr. Cruz, was housed 22 hours a day in that "solitary confinement" cell for more than a month under those conditions.** Plaintiff, Mr. Cruz, had not violated any established disciplinary rule, but instead because the prison alleged that it simply did not have any other place to house him. Plaintiff asserts that he was put under said conditions as further retaliation for voicing out the illegal acts of the Correctional Officers.

4.48 At that particular time, Plaintiff, Mr. Cruz, was supposed to receive two (2) daily insulin injections as prescribed for his type -2 diabetic condition. His insulin medication was supposed to be administered in the morning and late afternoon, between half an hour and to an hour (maximum) before or right after meals. *The Plaintiff did not receive a single dose of his prescribed insulin treatment for the first six or seven days of being housed in Cell # 1 of Prison 501's Section M.*

4.49 Plaintiff, Mr. Cruz, was also under Zoloft 100, Benadryl 50, Elavil 100 and Kloropin 1 mg., medication which help mental health condition. *Defendants with deliberately indifference denied access to the said medical and mental health services. The combination of denying Plaintiff his medications and housement in "solitary confinement" caused him to suffer deep depression and Plaintiff even expressed that he was having suicidal thoughts and felt like cutting his veins.* It was after various written and verbal requests from the Plaintiff that the prison administration provided the Plaintiff with these services.

### IV.    The Situation Now

4.50 On august the 15th, 2016, the Plaintiff, Mr. Cruz, was taken to the Hospital Centro Médico in Rio Piedras for an appointment with his Endocrinologist. As ordered by said specialist, Plaintiff began to have two different types of insulin in the mornings, a specific one at noon and once again twice in the afternoon. The prescribed order instructed the insulin be administered to Plaintiff half hour past or before meals. *Nonetheless, Defendant Nurse Vilma Rivera Ramirez determined that according to the instructions annotated in the system the insulin could be administered to the Plaintiff any time after meals and began to have the Plaintiff be brought down to have his prescribed insulin at times well past the ordered time threshold.*

4.51 Despite this been contrary to the medical order and the adverse effect this could have, Plaintiff, Mr. Cruz Berrios, continued to assist outside of schedule. Plaintiff wanted to avoid any allegations in respect to him denying the mentioned medical treatment. Recently – in the presence of Officer Rodríguez, whom is assigned to the Medical Ward, and Mrs. Monserrate Rivera, Supervisor at the Medical Ward – *Plaintiff, Mr. Cruz, brought to their attention and questioned Nurse Vilma Rivera Ramirez for not following the appropriate and established patient handling techniques while injecting him the insulin. Nurse Vilma Rivera Ramirez, as usual, was "throwing or dropping" the needle on plaintiff's body instead of squeezing it down with two finger to proceed with the subcutaneous injection as mandated for this kind of procedures.*

4.52 *Plaintiff, showed Officer Rodríguez and Mrs. Monserrate García his stomach (belly area) and waist – which was visibly bruised – where Nurse Vilma Rivera Ramirez has injected him before using the same pain and damage causing technique.* Mrs. Monserrate García tried to justify Nurse Vilma Rivera Ramirez's actions and Plaintiff responded that he was not coming back down to the Medical Ward until a nurse change or other arrangement be done as the current situation

24

was affecting his health.

4.53 Plaintiff continued to assist at noon and in the afternoon because the nurses that administer his insulin do it correctly. *Because nothing has been done about Nurse Vilma Rivera Ramirez's actions, Plaintiff met with his internist, psychologist and psychiatrist to express his concerns as well as his fears due to the emotional toll Nurse Vilma Rivera Ramirez's pain afflicting techniques have had on him.*

4.54 Plaintiff's psychiatrist opted for increasing Plaintiff's prescribed medication dose in an effort to have Plaintiff cope with the depression caused by Nurse Vilma Rivera Ramirez's negligent conduct. Plaintiff's Internist also decided to increase his diabetes related medication, Plaintiff now takes 9 pills to try to compensate for the lack of insulin (as prescribed by his Endocrinologist)., Plaintiff has presented various grievances seeking administrative remedies in relation to the involved Medical Ward staff and Nurse Vilma Rivera Ramirez's conduct, misconduct.

4.55 *Dating back to April the 18th Mr. Cruz has only been provided insulin a few times in different occasions and almost never on time as required.* We add that Mr. Cruz, despite his serious diabetic neuropathy condition, which affects his feet and legs, **has never seen a podiatrist**. Further, **he suffers from Hepatitis C and has never received a treatment to cure that condition, despite one being available**.

4.56 The PRDoC was, at some point, providing Plaintiff, *Mr. Cruz, the wrong psychiatric treatment and medication. This despite that his medical record and the Psychiatrist's recommendation provided otherwise.*

4.57 The following co-defendants have full knowledge of all of these situations: (a) the Secretary of the DoC, Elinar Ramos Lopez, (b) the Sub. Secretary of the DoC, Victor M. Rivera Sierra, (c) the Warden of Prison 501, Wanda Montañez-Santiago, and (d) the Warden of

Correctional Complex 448, Walter Soto Hernandez.

4.58 *The Correctional staff history of abusive and retaliatory conduct keeps repeating itself and it is only a question of time before such conduct causes his death. If the conduct continues, Mr. Cruz' health will continue to deteriorate and, if he does not perish, any time soon due to an abnormal sugar blood level (diabetic coma), the next step is dialysis. In sum, the defendants are systematically taking Mr. Cruz's life away.*

4.59 As evidenced by the latest events, *Plaintiff has fallen flat on his efforts to have this situation examined by the corresponding personnel as the Correctional Administration is now deliberately "misplacing" or "loosing" the grievance documents presented by him. In light of this circumstances, administrative appeal by Plaintiff would be futile and any administrative available remedies provide little or no genuine opportunity for Plaintiff to obtain adequate relief.* As stated before Plaintiff's life is at stake and irreparable injury may occur without immediate judicial relief.

4.60 Due to the fact that the PRDoC's and its actual Secretary, Einar Lopez Ramos, continue to disregard the Plaintiff and other inmates constitutional rights; the issues presented by the plaintiff raise substantial constitutional questions which could not be resolved through the administrative process. Plaintiff believes that any further recourse to the administrative process will unfortunately be insufficient to fully and satisfactorily protect the constitutional rights.

## 5. <u>CAUSES OF ACTION</u>

**A.   First Cause of Action: (Violation of 42 U.S.C.A. § 1983) Denial of Rights under the United States Constitution, 8th and 14th Amendments; Deliberate Indifference to Medical and Mental Health Needs.**

5.1 Plaintiff incorporates by reference each and every allegation contained in the above paragraphs of this Complaint, as if fully set forth herein.

5.2 The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. Prison officials have a duty under the Eighth Amendment care for the prisoner, who cannot, by reason of the deprivation of his liberty care for himself. The denial of medical care is forbidden because it subjects those who are vulnerable to gratuitous pain and suffering unrelated to any penal purpose.

5.3 This is also the kind of arbitrariness and abuse of power that constitutes a denial of plaintiff's rights to due process of law. Deliberate and systematic denial of serious critical medical and psychiatric needs constitutes cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States. The cruel and unusual punishment contained in the Eighth Amendment is applicable to sentenced prisoners. The Eighth Amendment applies to state actions through the Fourteenth Amendment.

5.4 Prison officials violate the Eighth Amendment when there has been an objective, serious deprivation resulting from deliberate indifference to the health and safety of an inmate. A prisoner must show (1) that a prison official denied him the minimal civilized measure of life's necessities, and (2) that the prison official's state of mind was that of deliberate indifference to inmate health and safety.

5.5 The Eighth Amendment, therefore, "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates."

27

5.6 By incarcerating them, society takes from prisoners the means to provide for their own needs, it must provide these basic needs or cause prisoners to suffer starvation, torture, and death. Because they are confined in jail, the inmates are totally dependent on defendants for essential medical and mental health care services. Prison officials conduct or omissions that deprive a prisoner of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society. Thus, the Eighth Amendment requires that prison officials must ensure that inmates receive adequate medical care.

5.7 Under § 1983, supervisory liability can be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization.

5.8 Mr. Cruz, as a prisoner under the custody of the State, has a right to receive medical treatment for his serious medical condition (diabetes). Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This indifference is true where the indifference is manifested by the prison doctors and prison guards/officers.

5.09 Deliberate indifference to a known medical condition can be displayed through inaction, persisting with inappropriate treatment, acting in a manner inconsistent with the recognized standard of care, or delaying necessary treatment and thus aggravating the injury or needlessly prolonging pain.

5.10 Defendants are responsible for establishing and implementing policies, practices and procedures designed to assure that Mr. Cruz, as an inmate, at Bayamón Correctional facility, receives adequate medical attention and treatment for his serious needs. These include the need for his two doses of insulin, appointments with his medical doctors (internist and

28

gastroenterologist, among other health specialits) and the psychological and/or psychiatric treatment. Instead, Defendants' conduct, as described above, demonstrates that defendants were and are still deliberately indifferent to Mr. Cruz's serious, indeed critical medical needs. Further, defendants' deliberate indifference towards Mr. Cruz has caused him to suffer unnecessarily.

5.11 The Defendants' affirmative acts, while acting under color of state law, of delaying Mr. Cruz' necessary insulin treatment (including the required diet) and at times not providing at all, is nothing short of acting in a manner inconsistent with the required standard of care. Denying Mr. Cruz insulin, diet, psychological and/or psychiatric and other medical treatments has harmed him terribly and thus needlessly prolonged his pain. Further, their conduct of filing frivolous administrative claims in order to cover up their conduct has also caused him emotional distress.

5.12 The Defendants' persistence with inappropriate treatment is the proximate cause of Mr. Cruz' depravation right to be free from the infliction of cruel and unusual punishment and of the damages and sufferings endured by the Plaintiff.

5.13 As a result thereof, Plaintiff José Julian Cruz Berrios (Mr. Cruz) was unjustifiably, purposely, recklessly and wantonly, and with deliberate indifference, exposed to the injuries and damages and harm by said Defendant (PRDoC) staff and officers as alleged in the First Cause of action in violation of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States of America.

5.14 The acts and omissions constituting this cause of action were purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive damages on these individual Defendants in their respective individual capacity.

29

B.   **Second Cause of Action – (Violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12132, and Rehabilitation Act of 1973, 29 U.S.C.A. § 701 et seq.).**

On July 12, 1990, Congress enacted *"The Americans with Disabilities Act"* ("ADA"), Pub. L. 101–336, Title II, § 202, July 26, 1990, 104 Stat. 337, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the "The Americans with Disabilities Act" ("ADA"), Pub. L. 101–336, Title II, § 202, July 26, 1990, 104 Stat. 337, Incorporates the non–discrimination principles of the Rehabilitation Act and extends them to state and local governments.

The Department of Justice (DOJ) was delegated by Congress with the authority to promulgate regulations implementing the ADA. 42 U.S.C.A. § 12134(a). The DOJ's regulations provide that "all programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of justice, including courts and correctional institutions" are governed by the ADA. 28 C.F.R. § 35.190(b)(6).

5.15 Plaintiff incorporates by reference the preceding paragraphs as if set forth in full and as a second claim for relief alleges:

5.16 Under the language of the ("ADA") 42 U.S.C.A. § 12134(a), and the DOJ's regulations, the ("ADA") is applicable to Bayamón Correctional Facility as a state correctional institution. Defendants are public entities, as departments, agencies, special purpose districts, or other instrumentalities of the Commonwealth of Puerto Rico, as defined in 42 U.S.C. § 12131(1).

5.17 Under the ("ADA"), coverage is established by showing that the individual has a disability, and the Act, at 42 U.S.C. § 12102(1), defines the term disability, with respect to an individual as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

5.18 Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5.19 Under the ("ADA"), an individual is covered if he or she has an actual disability, a record of a disability, or is regarded as having a disability. The ("ADA") significantly expanded the availability of **"regarded as"** claims. According to the statute, "[a]n individual meets the requirement of 'being regarded as having [a disabling] impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

5.20 However, the list found at 29 C.F.R. § 1630.2(j)(3), which appears under the regulatory heading "predictable assessments" the regulations clarify that: "…it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: … **diabetes substantially limits endocrine function**[.]" 29 C.F.R. § 1630.2(j)(3)(iii) (emphasis added).

5.21 The ("ADA") now states that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act."  42 U.S.C. § 12102(4)(A). The ADA introduced a new category of major life activity relating to the body's internal processes. The Act at 42 U.S.C. § 12102(2)(B) provides that:  "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions".

31

5.22 The regulations also provide that "[t]he operation of a major bodily function includes the operation of an individual organ within a body system." 29 C.F.R. § 1630.2(i)(1)(ii). This new provision means that plaintiffs with diabetes have a disability under the ("ADA") because diabetes substantially limits endocrine function. The purpose of the endocrine system is to produce and secrete needed hormones so they can be distributed throughout the body. Diabetes renders the body unable to produce adequate supplies of insulin, a critical hormone produced by the endocrine system.

5.23 Therefore, The Plaintiff is a disabled person as defined under 42 U.S.C.A. § 12131(2), and has a right not to be subjected to discrimination on the basis of his disability by Defendants. 42 U.S.C. § 12132.

5.24 As representatives of PRDoC, Defendants provide medical services for prisoners' mental and physical health needs, as well as counseling, psychiatric, psychological, drug treatment, and drug rehabilitation services. Individuals in the custody of PRDoC such as Plaintiff are wholly dependent on PRDoC, its prison staff and/or independent contractors for medical and mental health among other services. Individuals in the custody of PRDoC are also dependent on PRDoC and prison staff for all of their basic daily needs, including food, exercise, and safety.

5.25 Under the ADA, 42 U.S.C. § 12132, and 28 C.F.R. § 35.130(a), PRDoC and its prison staff must ensure that individuals in its custody are not, on the basis of disability, excluded from participation in or denied the benefits of its services, programs, or activities.

5.26 Defendants and PRDoC failed to provide Mr. Cruz with the assistance he require for effective treatment of his diabetic condition with healthcare personnel. Consequently, Plaintiff, may not be able to have the required access to medication to effectively control his diabetes nor have the immediate access and communication to these personnel when treatment is needed.

Pursuant to the obligations of the ("ADA"), Defendants were to provide the Plaintiff, as a diabetic and advanced diabetic neuropathy inmate, with the means to medical services and other services.

5.27 As known to all the Defendants Mr. Cruz has diabetes, and thus must closely monitor his blood sugar levels. This requires that he communicate with his doctors and other medical personnel, so that he can report any instances where he feels dizzy or otherwise has effects from either too high or too low blood sugar levels. Medical personnel must be ordered to effectively monitor Mr. Cruz so that he knows whether his blood sugar levels are within the acceptable range.

5.28 However, the Defendants have failed to provide Mr. Cruz with the assistance he requires for an effective treatment of his diabetic condition with healthcare personnel. Defendants also failed to provide Mr. Cruz with the assistance he needs to effectively communicate with medical personnel. As a result, he has had repeated episodes where his diabetes was uncontrolled, and on two occasions has been found <u>unconscious</u>; on one of those occasions Mr. Cruz was found bleeding out due to a fall as a result of insufficient blood sugar. Consequently, Mr. Cruz, may not be able to have the required access to medication to effectively control his diabetes nor have the immediate access and communication with these personnel when treatment is needed.

5.29 To comply with ("ADA") mandate Defendants must ensure that wheelchairs and other adaptive equipment be ready to use by inmates with disabilities. Also, Defendants must provide appropriate devices, such as medical trapezes and special shoes, as required to meet the needs of inmates with disabilities.

5.30 Defendants' failure provide the Plaintiff, whom because of his diabetic condition is compromised on his ability to walk unassisted to the point he can be regarded as mobility-impaired inmate, with a wheelchair, orthopedic shoes or other means of accommodation so that he could access the medical services, constituted unlawful and intentional discrimination on the basis of

33

disability in violation of Title II of the ("ADA"). Defendants' failure to comply with their obligations under the ("ADA") contributed to Mr. Cruz' physical and mental pain, through isolation, intimidation, and exclusion. These acts and omissions ultimately resulted in all Plaintiffs' damage as set forth below.

5.31 As a direct and proximate result of Defendants discriminatory acts, plaintiff has suffered and will continue to suffer loss of appropriate medical service benefits, physical health, mental anguish, pain and suffering, and other non-pecuniary loss.

5.32 At all times material hereto, defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

**C. Third Cause of Action - PRDoC Violations Under the Rehabilitation Act**

The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States ... shall, solely by reason of [ ] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a).

5.33 Plaintiff incorporates by reference the preceding paragraphs as if set forth in full and as a third claim for relief alleges:

5.34 Plaintiff is qualified individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2), and has a right not to be subjected to discrimination on the basis of his disability. 29 U.S.C. § 794(a).

5.35 Defendants, as departments, agencies, and/or instrumentalities of PRDoC, are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B) and were and are required to comply with the Rehabilitation Act.

5.36 The Rehabilitation Act and the regulations implementing it prohibit Defendants from denying Plaintiff, on the basis of his disability, the same access to services, benefits, activities, programs, and privileges as the access provided to other individuals, including healthcare services, disciplinary proceedings, and grievances.

5.37 The Rehabilitation Act and the regulations implementing it also prohibit Defendants from discriminatorily impairing Plaintiff's ability to have access and communicate effectively with medical personnel, prison staff, other inmates and individuals outside of prison.

5.38 The failure to provide appropriate services and the failure to provide access to services, benefits, activities, programs, and privileges are policies, regular practices, and/or customs of Defendants. These failures are ongoing and continue to this date.

5.39 Defendants' failure to provide appropriate and services has subjected Plaintiff to discrimination on the basis of his disability in violation of his rights under the Rehabilitation Act, in ways that include exclusion from the participation in, denial of the benefits of, and subjection to discrimination with respect to reception and classification programs, counseling services, healthcare services.

5.40 As a proximate result of Defendants' violations of Mr. Cruz' rights under the Rehabilitation Act, Mr. Cruz has suffered, and continues to suffer, from discrimination, unequal treatment, exclusion from Defendants' services, benefits, activities, programs, and requirements, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and injury to his health.

5.41 Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Mr. Cruz, and Defendants are liable to Mr. Cruz for harms suffered. Defendants' failure to comply

with the Rehabilitation Act will continue to result in harm to Mr. Cruz, as he will continue to be in the custody or under the supervision of PRDoC its prison staff, medical staff and or any other independent service provider and will continue to attempt to use or avail himself of the services, benefits, activities, programs, and privileges that should be available to inmates with disabilities in PRoC custody. <u>This harm will continue unless and until Defendants are ordered by this Court to make modifications</u> to their policies, practices and procedures pursuant to the Rehabilitation Act.

**D. Fourth Cause of Action – Police Brutality under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, and the Fourth Amendment.**

5.42 Plaintiff, José Julian Cruz Berrios (Mr. Cruz) hereby repeats, re-alleges and incorporates paragraphs 4.1-4.61, 38-50 and 5.1-5.45 above as though fully set forth herein and as a fourth claim for relief alleges:

5.43 Plaintiff brings this action as a result of the acts of cruelty, barbarism, unjustified, unwarranted and illegal corporal punishment to which he was subjected at the hands of Bayamón Correctional facility officers while in sole care and custody of the Puerto Rico Department of Corrections ("PRDoC"), and as a result of additional negligence thereafter.

5.44 While at the medical dorms area on February 12, 2016, at around 7:00 p.m., Mr. Cruz began to feel sick. Mr. Cruz requested to be given some insulin but the staff informed him that no doctor was available at that moment to give such order and that he will have to wait until next day.

5.45 Mr. Cruz began to feel worse and had to be taken to the CMC emergency room (Correctional Hospital at Bayamón Correctional Facility). Mr. Cruz was released from the Correctional Hospital at 8:30 p.m. and at 11:30 p.m., while he was still awaiting to be transferred

back to Institution 448, he began to feel sick again. Mr. Cruz requested to be taken back to the emergency room so the order to administer insulin be carried out the Doctor ordered. To no avail.

5.46 Mr. Cruz began to feel even worse than before and other inmates began to call the attention of guards. Officer Marcos Cruz Díaz was the first to show up, left and returned with another Officer that had his whole arm tattooed, badge 13056. Both Officers approached Mr. Cruz's wheelchair and pulled him abruptly, forcing him and pushing him to go into a confine cell. Mr. Cruz had difficulty walking and said Officers began to assault Mr. Cruz for no apparent reason.

5.47 An unidentified Officer arrived and ordered the other two Officers to stop beating Mr. Cruz. 30 minutes later, State Police arrived at the Institution 448 to gather information pertain a complaint for an alleged assault on the prison guards.

5.48 State Officer Collazo, badge 34659, assigned to the Bayamón North Precinct ordered the Correctional Officers involved in beating down Mr. Cruz to take him to the Emergency area so that he could receive medical attention due to the seriousness of the traumas caused by the blows to the face and head. State Officer Collazo informed Mr. Cruz that, to his personal knowledge, the Correctional Officers were providing him with erroneous, faulty or incorrect information and that was not to present charges as alleged.

5.49 As explained before, while at the infirmary, on February 25th 2016, a prison guard named Jonathan Hernandez, without authorization, entered Mr. Cruz' room and viciously beat him while he was resting in his sick bed. Mr. Cruz had to be attended for police brutality. That guard was not even assigned to that section of the complex. That case is currently being investigated.

5.50 In unjustifiably and unlawfully causing, directing and supervising the use excessive force to threaten, intimidate, berate, abuse and to physically punish Mr. Cruz as alleged and in mistreating him as alleged, said Defendant caused Mr. Cruz to be touched with the intent to harm

or offend Mr. Cruz, or caused Mr. Cruz to be touched with a willful disregard of Mr. Cruz's rights. Mr. Cruz did not consent to this harmful and offensive touching.

5.51 The policy of PRDoC Officers indiscriminately and for no reason threatening, intimidating, berating, abusing and physically punishing and communicating retaliatory responses against inmates who file grievances against Officers who abuse, beat or cause physical abuse to inmates is nothing new in Defendants at the Bayamon Correctional Facility and does not implement a punishment imposed by State law nor is it required to enforce the punishments actually required by State law.

5.52 The pattern of abuse, intimidation, threats and physical punishment endure by Mr. Cruz has been continuous and dates back to several years and ever since Plaintiff began to demand Defendants comply with their Constitutional obligations and that his rights be respected.

5.53 The next allegations (5.59-5.67) are set out to demonstrate that the Defendant's conduct, misconduct are not isolated occurrences and to show proof of the Defendant's agenda against Plaintiff carried out with the sole intent to cause grave physical, emotional and psychological harm to Plaintiff.

5.54 On October 30, 2014 Mr. Cruz had to be taken to the prison's medical ward because his blood sugar levels were over 400 and he fainted. During the trip to the emergency room and while at the hospital, co-defendants Vargas Casillas, Nieves Mercado, Matias Ramos and Aquino Curbelo, dragged Mr. Cruz around by handcuffs and shackles, and at one point even covered his face with a sweat-shirt in order to cause him pain and suffering by simulating that he was being smothered. The hospital staff noted the abuse and due to the cuffs and shackles being closed tight to his skin even had to attend the cuts on his wrists and legs. They attended the case as a police brutality case.

38

5.55 As another example of the undesirable and perhaps illegal conduct of co-defendants, plaintiff points out the actions of Cpt. David Aguila Rodríguez and Lt. Hector Santiago, whom while not satisfied their retaliatory behavior and with depriving Mr. Cruz of medical attention, also filed eighteen (18) frivolous administrative complaints against Mr. Cruz. Their intention was to cover up their conduct and to intimidate Mr. Cruz by using the administrative grievance procedure against him.

5.56 On February 16, 2015, plaintiff, Mr. Cruz was also the victim of cruel beat down at the hands of Officer Fernando Troche Rivera, badge # 13391 while at Annex 292 of the Bayamon Correctional Facility. That afternoon Mr. Cruz was instructed to leave his cell to proceed to the medical area to have his insulin administered but, due to a misunderstanding on the inmate restrain protocol, Officer Christian Hernández requested Mr. Cruz to turn back to his cell to be handcuffed (this contrary the unusual followed protocol).

5.57 Officer Christian Hernández was acting aggressive towards Mr. Cruz and threatened to leave Mr. Cruz without his insulin treatment. Mr. Cruz asked to speak to a superior Officer and Officer Christian Hernández headed to the control area in section D, not more than a minute later, Officer Gerardo Troche Rivera aggressively told Mr. Cruz to forget about his insulin treatment grabbing him and pulling him by the shirt. Mr. Cruz struggled to remain on his feet and held on to Officer Troche Rivera to avoid a fall. Officer Troche Rivera responded by punching Mr. Cruz repeatedly on his face until another Officer, Carlos Cruz sprayed pepper gas on Mr. Cruz's face. Subdued and unable to defend himself Mr. Cruz was again punched by Officer Troche Rivera on the left side of his face until another Officer reminded Officer Troche Rivera that the section was monitored by surveillance cameras.

5.58 A disciplinary complaint was filed against Mr. Cruz (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), on the day of the

hearing an Officer by the name José M. García, Badge 14094 filed another complaint against Mr. Cruz. Plaintiff asserts that the complaint filed by Officer García had the only purpose of keeping him from attending the disciplinary complaint related to the incident with Officer Troche Rivera.

5.59 The hearing was held without Mr. Cruz's appearance and his privileged were revoked for 60 days from May the 10th to July 8th, 2015. It is important to mention that Mr. Cruz followed every steps to exhaust the administrative remedies to resolve the disciplinary compliant filed against him by Officer Troche Rivera, filling a motion to reconsider that resulted on the dismissal of his administrative sanction on June 11, 2015. Nonetheless, the administration did not notified the decision until August 17, 2015; this contrary to the established grievance procedure. The deliberate delay in notifying the decision is proof that this conduct makes remedies unavailable in practice and is another example of the Defendants retaliatory policy and bad faith against Mr. Cruz which caused Mr. Cruz to unjustly serve an undeserved punishment.

5.60 The conduct of Defendants Officers, Jonathan Hernandez, Gerardo Troche Rivera in unlawfully and for no justifiable reason or cause, constitutes unlawful and excessive use of force on Mr. Cruz. Jonathan Hernandez, Geraldo Troche Rivera's conduct, misconduct in unjustifiably assaulting, intimidating, berating, humiliating and thereafter continuous coercion of Mr. Cruz does not implement a punishment imposed by State law nor was it required to enforce the punishments actually required by State law; and the conduct of Defendants Einar Ramos Lopez and Lefty Borrero Rivera, the Warden of Prison 501, Wanda Montañez-Santiago, and the Warden of Correctional Complex 448, Walter Soto Hernandez fostered the wanton affliction of pain and the malicious acts with conscious disregard and deliberate indifference to Plaintiff's civil rights, this despite of knowing that Plaintiff, Mr. Cruz, was being or had been subjected to such punishment and allowing it to happen without interference or intervention.

5.61 This intimidating and berating intentions towards Mr. Cruz continued, in June 24 and 26, 2015 two more disciplinary complaints (215-15-00335 and 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) were filed by Officer Emmanuel Tirado Carrillo, badge 13905. These complaints contained false allegations and resulted in the imposition of an additional 60 days sanction. Said complaints were later dismissed.

5.62 Defendants, in engaging in the aforementioned conduct intended and continue to intend to cause Mr. Cruz emotional distress and/or acted and continue to act with reckless disregard of the probability that Mr. Cruz would suffer emotional distress, knowing of Mr. Cruz's awareness when the conduct occurred.

5.63 As mentioned before, Defendants Einar Ramos Lopez, Lefty Borrero Rivera, the Warden of Prison 501, Wanda Montañez-Santiago, and the Warden of Correctional Complex 448, Walter Soto Hernández are responsible for establishing and implementing policies, practices and procedures designed to assure the safety and well-being of inmates; including that of Mr. Cruz, as an inmate, at Bayamón Correctional facility.

5.64 Defendants Einar Ramos Lopez, Lefty Borrero Rivera, the Warden of Prison 501, Wanda Montañez-Santiago, and the Warden of Correctional Complex 448, Walter Soto Hernandez failed to keep Mr. Cruz safe from abuse, indiscriminate physical abuse and punishment while in their custody and care despite awareness of the wrongful and illegal conduct of Defendants PRDoC Officers. Defendants and Defendants DOES refused to act to intervene in the known wrongful and illegal conduct of the other Officers to save and protect Mr. Cruz from harm and injury and even permitted another inmate to brutally beat Mr. Cruz an act that threatened the life and his safety in their presence.

5.65 It is important to mention that the then interim PRDoC's Secretary, Attorney José A. Aponte Caro, Héctor M. Fontanez Rivera, PRDoC's Auxiliary Secretary, Narciso De Jesús Cardona,

Bayamón Correctional Complex Regional Director, Liutenant María V. Cruz Ríos, East Region Security Director and the Warden of the Maximum Security Annex 292, Mr. Lesty Borrero Rivera himself were contacted, in light of the aforementioned events, by Plaintiff's attorney. Plaintiff's Attorney sent email correspondence to the official government email accounts of the before named individuals followed by certified letters via the United States Postal Service. To no avail.

5.66 The conduct of Defendants PRDoC Officers, Defendants Einar Ramos Lopez, Lesty Borrero Rivera, the Warden of Prison 501, Wanda Montañez-Santiago, the Warden of Correctional Complex 448, Walter Soto Hernandez, and Defendants DOES was a substantial factor in causing Mr. Cruz to suffer and to continue to suffer from severe emotional distress, mental pain, anguish, embarrassment, humiliation, and psychological disturbance. Plaintiff, Mr. Cruz, has suffered special and general damages as a result of the emotional distress, mental pain, anguish, embarrassment, humiliation and psychological disturbance.

5.67 As a result, this deliberate indifferent attitude, conduct and inaction by Defendants Einar Ramos Lopez, Lefty Borrero Rivera, the Warden of Prison 501, Wanda Montañez-Santiago, and the Warden of Correctional Complex 448, Walter Soto Hernandez, has been a cause and a driving force behind the unconstitutional acts of brutality herein which caused Mr. Cruz's injuries and damages ...s alleged.

5.68 As a direct and proximate cause of the acts and omissions of Defendants PRDoC Officers, Defendants Einar Ramos Lopez, Lefty Borrero Rivera, the Warden of Prison 501, Wanda Montañez-Santiago, the Warden of Correctional Complex 448, Walter Soto Hernandez, Defendants DOES, and each of them, Mr. Cruz suffered extreme and severe mental anguish and pain and has been injured in mind and body, all to Mr. Cruz's general damages, which is hereby sought, according to proof.

5.69 The aforementioned acts of the Defendants named herein were willful, wanton, malicious, reckless and oppressive and done with the intent to deprive Mr. Cruz of his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, and the Fourth Amendment, thereby justifying the awarding of exemplary and punitive damages as to each of these individual defendants.

## E. Fifth Cause of Action - Action Supplemental Jurisdiction: Violations Under Commonwealth's Constitution And Laws Of Puerto Rico.

Plaintiff, José Julian Cruz Berrios (Mr. Cruz) hereby repeats, re-alleges and incorporates paragraphs 4.1-4.49, 50-60 and 5.1-5.69 above as though fully set forth herein and as a fourth claim for relief alleges:

5.70 The facts set forth in this complaint constitute violations of plaintiffs' rights by defendants under the Constitution of Puerto Rico, Article II, Sections 1, 7 and 8; under the Civil Code of Puerto Rico of 1930, Article 1802, et seq., 31 LPRA §5141, et seq. Supplemental jurisdiction over all claims arising under the Constitution and Laws of the Commonwealth of Puerto Rico arise from the same nucleus of operative facts. 28 USC §1367.

5.71 The facts alleged in this complaint state a claim under the Constitution of the Commonwealth of Puerto Rico, Article 1802, et seq., 31 LPRA §5141 for which defendants, including the Commonwealth of Puerto Rico, are liable.

5.72 Under the Puerto Rico statute that allows claims against the state, the Commonwealth of Puerto Rico is liable to Plaintiff for the unlawful and negligent conduct of its employees acting in their official capacity.

5.73 Under Article 1802 and 1803, Defendants are liable to Plaintiffs, as a direct result of their unlawful and negligent actions.

43

**WHEREFORE**, as a proximate result of Defendants' wrongful and unlawful actions described above, PLAINTIFF José Julian Cruz Berrios (Mr. Cruz) respectfully request and prays for the following:

A) Issue a Declaratory Judgment declaring that Defendants' actions and/or omissions violate the First, Fourth and Fourteenth Amendments of the Constitution of the United States, the Bill of Rights of the Commonwealth of Puerto Rico Constitution, and Puerto Rico torts law;

B) An Order be issued for Defendants to:

    1) Comply with their Constitutional and statutory obligations and provide Plaintiff his medical (insulin) treatment as ordered by his physician,

    2) Ordering Defendants to provide plaintiff with access to the appropriate medical professionals to treat his diabetic neuropathy condition on a regular basis, including access to a Podiatrist, Psychiatrist, Gastroenterologist and any other health specialists.

    3) Issue preliminary and permanent injunctive relief to prohibit Defendants from causing PLAINTIFF any further emotional distress, mental pain, anguish, embarrassment, humiliation, physical abuse or punishment and psychological disturbance; and to halt any future unconstitutional conduct and prevent the same sorts of violations alleged in this Complaint in any of the various facilities where PLAINTIFF could be housed.

C) That Judgment be entered against those Defendants sued in their individual capacities, awarding monetary damages in an amount an amount to be determined according to proof; for exemplary and punitive damages in light of Defendants' willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiffs' civil rights;

D) Award compensatory and general damages to the PLAINTIFF, in an amount to be determined at trial as a remedy for the mental and emotional distress, the cause physical pain, hardship, loss

of dignity, suffering, shock, worry, anxiety, trauma, injury to his health, emotional pain and suffering.

E) PLAINTIFF, José Julian Cruz Berrios (Mr. Cruz), requests and is entitled to a reasonable sum of attorney's fees pursuant to 42 U.S.C. Section 1988. Therefore, request that expenses, costs, pre-judgment interests and attorneys' fees be awarded in the civil rights causes of action as provided by statute;

F) That the court grant such other and further relief as the court deems equitable and just.

PLAINTIFF DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

**RESPECTFULLY SUBMITTED**

In Bayamón, Puerto Rico, this **16** day of December, 2016.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed, on this* **16** *day of December, 2016, in Bayamón, Puerto Rico.*

**Mr. José Julián Cruz Berríos**
Inmate: 1 – 106312

Institución Penitenciaria Estatal
Bayamón 501 – 2 G   (Máxima Seguridad)

50 Carr. Unit # 607073
Industrial Luchetti
Bayamón, Puerto Rico 00961 – 7403

45