UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ JULIÁN CRUZ BERRIOS,<br><br>Plaintiff,<br><br>v.<br><br>PHYSICIANS HMO, GRUPO DE SALUD CORRECCIONAL INC.; COMMONWEALTH OF PUERTO RICO, ERIC ROLÓN, ADMINISTRATOR OF THE DEPARTMENT OF CORRECTIONS REHABILITATION OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Defendants | CIVIL NO. 16-3155 (PAD) |

## AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Rules 7 and 65 of the Federal Rules of Civil Procedures, Plaintiff José Julián Cruz Berrios, moves the Court for an Expedited Temporary Restraining Order or Preliminary Injunction to prevent Defendants, from denying him necessary medical care to treat his co-Type 2 diabetes and other co-ocurring medical conditions, and otherwise discriminating against him on the basis of his disability.

from withholding that medication would be catastrophic. Looking beyond the parties to this case, Mr. Smith's family has already lost his only sister to an opioid overdose, and

they should not be forced to experience another tragedy. And, more broadly, Defendants' policies worsen the already deadly opioid crisis in the state by triggering

## I. INTRODUCTION

Plaintiff, José Julián Cruz Berrios, suffers from Type 2 diabetes, and other co-occurring medical conditions, including diabetic retinopathy, and diabetic neuropathy, anxiety, and depression. José Julián Cruz Berrios requires five (5) doses of insulin divide in three (3) sections a day, via injection, at the prisons medical ward. Mr. Cruz-Berrios' five (5) doses of insulin are supposed to be administered in the morning and late afternoon, between half an hour and an hour before or after meals. Mr. Cruz-Berrios condition also requires a low sodium "diabetic diet" of 2200 calories a day, prepared for insulin dependent patients. It must include three (3) fruit snacks. Mr. Cruz-Berrios diabetic neuropathy, caused by years of suffering from diabetes, is so advanced to the point of affecting his lower extremities and ability to walk unassisted. A four (4) pronged cane is necessary in order for Mr. Cruz-Berrios to walk.

These conditions were diagnosed by physicians working for and/or on behalf of the DCR, and all of the aforementioned co-defendants and medical staff at Prison 501 have personal knowledge of the fact that Mr. Cruz -Berrios suffers from the aforementioned Type 2 diabetes and other co-occurring medical conditions, and of the fact that medical services are required to treat his illness, specifically insulin administration and special medical diet, including snacks.

Diabetes is a widespread and serious health condition with two significantly different types, and individual variations in its manifestation and care. Individuals with type 1 diabetes will require regular administration of insulin, and possible emergency care for severe hyperglycemia or DKA. Individuals with type 2 diabetes may require administration of oral medications, or a modified administration of insulin, depending on the progression of their

condition. For both types of diabetes, effective care may require regular blood glucose checks to avoid hyperglycemia or hypoglycemia, managing carbohydrate intake to avoid swings in blood glucose levels, and care for secondary complications such as vision problems, nerve pain, kidney failure or heart problems. People with type 2 diabetes are more likely to develop hyperglycemic hyperosmolar syndrome. The mortality rate for this condition is high.

Mr. Cruz-Berrios has not been receiving of his insulin treatment and injections as ordered by his attending physicians. Mr. Cruz-Berrios filed a petition of administrative remedies but the situation remained unattended. Mr. Cruz-Berrios has suffered from hyperglycemia or DKA in two (2) occasions. This injunctive relief is requested to warrant the necessary and adequate treatment for his serious medical needs.

Mr. Cruz-Berrios meets all of the elements for a temporary restraining order (TRO) or order of preliminary injunctive relief. First, Mr. Cruz-Berrios is likely to succeed on the merits of his case. Mr. Eric Rolón, Secretary of DCR and Physicians HMO, doing business as Grupo de Salud Correccional, Inc have been made aware of the seriousness of Mr. Cruz-Berrios medical needs and the importance of adequate insulin treatment while incarcerated. This refusal and/or delay to provide medical care amounts to discrimination on the basis of disability in violation of the American with Disabilities Act, and deliberate indifference to a serious medical condition in violation of the Eighth Amendment.

Second, Mr. Cruz-Berrios will suffer immediate irreparable harm absent and injunction. During his incarceration his mean total daily insulin dosage increased. He has suffered from hyperglycemia. He also developed diabetic retinopathy and neuropathy.

Defendants refusal and/or delay to provide medical care will inflict physical pain, will be psychologically damaging and accompanied by devastating long-term effects.

## II.  FACTS

### Diabetes

Diabetes is a complex, chronic illness requiring continuous medical care with multifactorial risk-reduction strategies beyond glycemic control. Ongoing patient self-management education and support are critical to preventing acute complications and reducing the risk of long-term complications. Significant evidence exists that supports a range of interventions to improve diabetes outcomes.

The American Diabetes Association's (ADA's) "<u>Standards of Medical Care in Diabetes</u>," referred to as the Standards of Care, is intended to provide clinicians, patients, researchers, payers, and other interested individuals with the components of diabetes care, general treatment goals, and tools to evaluate the quality of care. The Standards of Care recommendations are not intended to preclude clinical judgment and must be applied in the context of excellent clinical care, with adjustments for individual preferences, comorbidities, and other patient factors.

Many patients with type 2 diabetes eventually require and benefit from insulin therapy. Comprehensive education regarding self-monitoring of blood glucose, diet, and the avoidance and appropriate treatment of hypoglycemia are critically important in any patient using insulin. Basal insulin alone is the most convenient initial insulin regimen and can be added to oral agents. Starting doses can be estimated based on body weight

(e.g., 10 units a day or 0.1–0.2 units/kg/day) and the degree of hyperglycemia, with individualized titration over days to weeks as needed. The principal action of basal insulin is to restrain hepatic glucose production, with a goal of maintaining euglycemia overnight and between meals. Individuals with type 2 diabetes may require doses of insulin <u>before</u> meals in addition to basal insulin. The recommended starting dose of mealtime insulin is either 4 units or 10% of the basal dose at each meal. Titration is done based on home glucose monitoring or A1C. With significant additions to the prandial insulin dose, particularly with the evening meal, consideration should be given to decreasing the basal insulin dose.

**Mr. Cruz/Berrios' Medical History**

Mr. Cruz/Berrios has been diagnosed with Type 2 diabetes and co-occurring medical conditions, including diabetic retinopathy, diabetic neuropathy, anxiety disorder, and depression.

Mr. Cruz-Berrios requires five (5) doses of insulin divide in three (3) sections a day, via injection, at the prisons medical ward. Mr. Cruz-Berrios' five (5) doses of insulin are supposed to be administered in the morning and late afternoon, between half an hour and an hour before or after meals.

Mr. Cruz-Berrios condition also requires a low sodium "diabetic diet" of 2200 calories a day, prepared for insulin dependent patients. It must include three (3) fruit snacks. Mr. Cruz-Berrios diabetic neuropathy, caused by years of suffering from diabetes, is so advanced to the point of affecting his lower extremities and ability to walk unassisted. A four (4) pronged cane is necessary in order for Mr. Cruz-Berrios to walk.

On August the 15th, 2016, Mr. Cruz-Berrios, was taken to the Hospital Centro Medico in Rio Piedras for an appointment with his Endocrinologist. As ordered by said specialist, Plaintiff began a new treatment protocol. Mr. Cruz-Berrios would use two different types of insulin in the mornings, a specific one at noon and once again twice in the afternoon. The prescribed order instructed the insulin be administered to Plaintiff half hour past or before meals. Nonetheless, Defendants determined that according to the instructions annotated in the system the insulin could be administered to the Plaintiff any time after meals and began to have the Plaintiff be brought down to have his prescribed insulin at times well past the ordered time threshold.

Despite this been contrary to the medical order and the adverse effect this could have, Mr. Cruz-Berrios, continued to assist outside of schedule. Plaintiff wanted to avoid any allegations in respect to him denying the mentioned medical treatment.

Defendants often times are not following the appropriate and established patient handling techniques while injecting Mr. Cruz-Berrios the insulin.

Mr. Cruz-Berrios has only been provided insulin a few times in different occasions and almost never on time as required. We add that Mr. Cruz-Berrios. Despite his serious diabetic neuropathy condition, which affects his feet and legs, has never seen a podiatrist. Further, he suffers from Hepatitis C and has never received a treatment to cure that condition, despite one. Being available.

Due to the fact that the DCR's and its actual Secretary, Eric Rolón continues to disregard the Plaintiff and other inmates constitutional rights; the issues presented by the plaintiff raise substantial constitutional questions which could not be resolved through the administrative process. Plaintiff believes that any further recourse to the administrative process will unfortunately be insufficient to fully and satisfactorily protect his constitutional rights.

III.  ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008). In this case, the facts show that Mr. Cruz-Berrios is likely to succeed in showing that Defendants' policies violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Eighth Amendment of the Constitution; that Defendants' refusal to provide necessary medical care will cause Mr. Cruz-Berrios irreparable harm; and that the balance of hardships and the public interest strongly favor the issuance of the injunction.

**Mr. Cruz-Berrios is Likely to Succeed On the Merits of His Statutory and Constitutional Claims**

**A.     Mr. Cruz -Berrios is Likely to Succeed On The Merits of His ADA Claim**

Mr. Cruz-Berrios is likely to succeed on the merits of his claim that denying or delaying him access to adequate medical services because of his Type 2 diabetes constitutes unlawful discrimination under the Americans with Disabilities Act ("ADA").

The ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of that disability. 42 U.S.C. § 12132. As instrumentalities of state and local government, Puerto Rico's prisons qualify as a "public entit[ies]." 42

U.S.C.§ 12131(1)(B); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

In order to state a claim against a public entity under Title II of the ADA, a plaintiff must allege three elements: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiffs disability." Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000)). Each of those elements is satisfied here.

1. **Mr. Cruz-Berrios is Qualified Individual with a Disability**

Mr. Cruz-Berrios suffers from a severe and chronic disability and is qualified to receive medical services in prison.

As an initial matter, Mr. Cruz-Berrios is disabled under the ADA. Individuals with Type 2 diabetes are "qualified individuals with disabilities" under the Americans with Disability Act. See 42 U.S.C. § § 12102, 1213 1(2). The term "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C.A. § 12102.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Under the ("ADA"), an individual is covered if he or she has an actual disability, a record of a disability, or is regarded as having a disability. The ("ADA") significantly expanded the availability of "regarded as" claims. According to the statute, "[a]n individual meets the requirement of 'being regarded as having [a disabling] impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

However, the list found at 29 C.F.R. § 1630.20)(3), which appears under the regulatory heading "predictable assessments" the regulations clarify that: "...it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: •.. diabetes substantially limits endocrine function[.]" 29 C.F.R. § 1 630.2(.j)(3)(iii) (emphasis added).

The ("ADA") now states that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C. § 12102(4)(A). The ADA introduced anew category of major life activity relating to the body's internal processes. The Act at 42 U.S.C. § 12102(2)(B) provides that: "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions".

The regulations also provide that "the operation of a major bodily function includes the operation of an individual organ within a body system." 29 C.F.R. § 163 0,2(i)(1)(ii). This new provision means that plaintiffs with diabetes have a disability under the ("ADA") because diabetes substantially limits endocrine function. The purpose of the endocrine system is to produce and secrete needed hormones so they can be distributed throughout the body. Diabetes renders the body unable to produce adequate supplies of insulin, a critical hormone produced by the endocrine system. Therefore, The Plaintiff is a disabled person as defined under 42 U.S.C.A. § 12131(2), and has a right not to be subjected to discrimination on the basis of his disability by Defendants. 42 U.S.C. § 12132.

As representatives of DCR, Defendants Physicians HMO provide medical services for prisoners' mental and physical health needs, as well as counseling, psychiatric, psychological, drug treatment, and drug rehabilitation services. Individuals, in the custody of DCR such as Plaintiff are wholly dependent on DCR, its prison staff and/or independent contractors for medical and mental health among other services. Individuals in the custody of DCR are also dependent on DCR and prison staff for all of their basic daily needs, including food, exercise, and safety.

Under ADA, 42 U.SC. § 12132, and 28 C.F.R. § 35.130(a), DCR , Physicians HMO and its Prison staff must ensure that individuals in its custody are not, on the basis of disability, excluded from participation in or denied the benefits of its services, programs, or activities.

Defendants Physicians HMO and DCR failed to provide Mr. Cruz-Berrios with the assistance he require for effective treatment of his diabetic condition with healthcare personnel. Consequently, Plaintiff, may not be able to have the required access to medication to effectively control his diabetes nor have the immediate access and communication to these personnel when treatment is needed.

Pursuant to the obligations of the ("ADA"), Defendants were to provide the Plaintiff; as a diabetic and advanced diabetic neuropathy inmate, with the means to medical services and other services. As known to all the Defendants Mr. Cruz-Berrios has diabetes, and thus must closely monitor his blood sugar levels. This requires that he communicate with his doctors and other medical personnel, so that he can report any instances when he feels dizzy or otherwise has effects from either too high or too low blood sugar levels. Medical personnel must be ordered to effectively monitor Mr. Cruz-Berrios so that he knows whether his blood sugar levels are within the acceptable range.

 However, the Defendants have failed to provide Mr. Cruz with the assistance he requires for an effective treatment of his diabetic condition with healthcare personnel. Defendants also failed to provide Mr. Cruz-Berrios with the assistance he needs to effectively communicate with medical personnel. As a result, he has repeated episodes where his diabetes was uncontrolled, and on two occasions has been found unconscious; on one of those occasions Mr. Cruz was found bleeding out due to a fall as a result of insufficient blood sugar.

To comply with ("ADA") mandate Defendants must ensure that wheelchairs and other adaptive equipment ready to use by inmates with disabilities. Also, Defendants must provide appropriate devices, such as medical trapezes and special shoes, as required to meet the needs of inmates with disabilities.

Defendants' failure provide the Plaintiff; whom because of his diabetic condition is compromised on his ability to walk unassisted to the point he can be regarded as mobility-impaired inmate, with a wheelchair, orthopedic shoes or other means of accommodation so that he could access the medical services, constituted unlawful and intentional discrimination on the basis of disability in violation of Title II of the ("ADA"). Defendants' failure to comply with their obligations under the ("ADA") contributed to Mr. Cruz-Berrios' physical and mental pain, through isolation, intimidation, and exclusion. 5.31 As a direct and proximate result of Defendants discriminatory acts, plaintiff has suffered and will continue to suffer loss of appropriate medical service benefits, physical health, mental anguish, pain and suffering, and other non-pecuniary loss.

At all times material hereto, defendant engaged in a discriminatory practice or practices with malice or reckless indifference to-the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States ... shall, solely by reason of [ ] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a).

Plaintiff is qualified individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2), and has a right not to be subjected to discrimination on the basis of his disability. 29 U.S.C. § 794(a).

Defendants, as departments, agencies, and/or instrumentalities of DCR, are "program[s] or activit[ies]" Within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B) and were and are required to comply with the Rehabilitation Act.

he Rehabilitation Act and the regulations implementing it prohibit Defendants from denying Plaintiff, on the basis of his disability, The same access to services, benefits, activities, programs, and privileges as the access provided to other, individuals, including healthcare services, disciplinary proceedings, and grievances.

he Rehabilitation Act and the regulations implementing it also prohibit Defendants from discriminatorily impairing Plaintiffs ability to heve access and communicate effectively with medical personnel, prison staff, other inmates and individuals outside of prison.

The failure to provide appropriate services and the failure to provide access to services, benefits, activities, programs, and privileges are policies, regular practices, and/or customs of Defendants. These failures are ongoing and continue to this date.

The Defendants' failure to provide appropriate and services has subjected Plaintiff to discrimination on the basis of his disability in violation of his rights under the Rehabilitation Act, in ways that include exclusion from the participation in, denial of

the benefits of, and subjection to discrimination with respect to reception and classification programs, counseling services, healthcare services.

Despite his disability, Mr. Cruz-Berrios is otherwise qualified to receive the benefit of healthcare during his incarceration. As a prisoner, Mr. Cruz-Berrios is entitled to the necessities of life, including adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31-32 (1993); Estelle v. Gamble, 429 U.S. 97,104 (1976); Boyce v. Moore, 314 F.3d 884-89 (7th Cir. 2002). When a state "so restrains an individual's liberty that it renders him unable to care for himself," government must provide basic human needs such as medical care. Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999) (quoting Helling, 509 U.S. at 34); Brown v. Plata, 563 U.S. 493, 510 (2011).

**B.     Plaintiff is Likely to Succeed On The Merits of His Eighth Amendment Claim**

Mr. Cruz-Berrios is likely to succeed on the merits of his Eighth Amendment claim that denying medication to treat his substance use disorder constitutes cruel and unusual punishment. Prison officials have an affirmative obligation under the Eighth Amendment to provide prisoners with the necessities of life, including medical care. Farmer, 511 U.S. at 832; Helling, 509 U.S. at 3132; Estelle, 429 U.S. at 104. As courts across the country have consistently held, the Eighth Amendment "imposes a duty upon states to provide adequate medical care to incarcerated individuals." Boyce v. Moore, 314 F.3d 884-89 (7th Cir. 2002).

 Most courts assume that diabetes is a serious medical condition, including non-insulin using type 2 diabetes, with little additional evidence required. See, Ortiz, 656 F.3d at

527, 530-32 (accepting plaintiff's medically incorrect assertion that failure to monitor blood glucose and take oral medication for Type 2 diabetes could cause a detainee to "slip into either a hyperglycemic or hypoglycemic state, which could lead to a fatal coma"). Nevertheless, some courts view type 2 diabetes skeptically, especially if the plaintiff in question has presented little

**Risk Caused by Diabetes**

Deliberate indifference requires an examination of a prison officials' subjective mental state. Farmer, 511 U.S. at 842. A prison official who is unaware of a substantial risk of harm might escape liability, even if that risk was obvious and a reasonable prison official should have noticed it. Id. The requisite mental state required is similar to that required for criminal recklessness: more than mere negligence, but not requiring a specific purpose to cause substantial harm. Id. at 835-36; Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (deliberate indifference standard requires a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health.") In other words, there is no constitutional violation unless a prison official knows about and disregards a substantial risk of serious harm, even if the action in question "constitutes medical malpractice." Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006).

However, this subjective knowledge may be proved through circumstantial evidence. Farmer, 511 U.S. at 842. This evidence can show the risk was so obvious that the prison official must have known about it. Id.; see also Owensby v. City of Cincinnati, 385 F. Supp. 2d 626, 648 (S.D. Ohio 2004) (holding that "the fact that the official actually drew the required inference may be demonstrated through circumstantial evidence or by

showing that the risk was 'obvious"). In other words, objective evidence of extremely obvious medical needs may prove an official must have known about those needs, even if the official denies medical knowledge. See Jackson v. Fauver, 334 F. Supp. 2d 697 (D. N.J. 2004) (deliberate indifference may be proved through "objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence.") (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)); see also Howard v. City of Columbus, 239 Ga. App. 399, 404 (Ga. Ct. App. 2000) (holding that for the purposes of "deliberate indifference," knowledge does not require a "final diagnosis, correct diagnosis, or a complete medical history when the inmate has not been allowed to see and to be examined by a physician or when medical care has been unreasonably delayed").

The Eighth Amendment protection against deliberate indifference only applies to post-conviction detainees, such as inmates in prisons; protections for pre-trial detainees under the due process clause of the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere, 463 U.S. at 244.. It is theoretically possible that protections for pre-trial detainees might be stronger than those provided to post-conviction prisoners. See Gibson v. Cnty. of Washoe, NV., 290 F.3d 1175, 1188 n.9 (9th Cir. 2002)

   **WHEREFORE** For the preceding reasons, Plaintiffs respectfully request that this Court grant a temporary restraining order and preliminary injunction enjoining Defendants until Plaintiffs may be heard on the merits of their Complaint for a permanent injunction.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 13th day of May, 2019.

CERTIFICATE OF SERVICE: I Hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties in the instant case.

*S/Lillian N. Miranda Rodríguez*
**Lillian N. Miranda Rodríguez**
USDC-PR 209501
MIRANDA LAW OFFICE
P.O. Box 6525
San Juan, P.R., 00914-6525
Tel/Fax 787-726-3960
li_nmr@yahoo.com
licenciadalillianmiranda@gmail.com