IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE JULIAN CRUZ BERRIOS<br>Plaintiff,<br><br>v.<br><br>PUERTO RICO DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.<br>Defendant. | CIVIL NO. 16-3155 (PAD)MEL |

## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

**COMES NOW** co-defendants, **Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico** ("DCR"), **Pedro Nieves Mercado, Francisco Matias Ramos, Monserrate Garcia, Javier Vargas Casillas, Wanda Montañez Santiago, Fernández Troche Rivera, Emmanuel Tirado Carrillo, Wilfredo Jimenez Rodríguez, Javier Luna, Héctor Santiago, Walter Soto Hernández, David Águila Rodríguez and Marcos Cruz Díaz**, in their personal and official capacities, without submitting to this Court's jurisdiction and without waiving any right or defense arising from Title III of PROMESA and the Commonwealth's Petition under said Title, and through the undersigned attorney respectfully sets forth and prays:

### I. INTRODUCTION

Plaintiff José Cruz Berrios ("Cruz" or "Plaintiff"), is an inmate under the custody of the DCR, incarcerated at the "Bayamon" 501 Correctional Institution. On December 16, 2016, Mr. José Julián Cruz-Berríos filed a pro se complaint under Title 42, United States Code, Section 1983; the American with Disabilities Act of 1990, 42 U.S.C. §12132; the Rehabilitation Act of 1973, 29 U.S.C. §794; the Constitution of Puerto Rico and 31 L.P.R.A. §5141 against the Puerto Rico Department of Corrections and Rehabilitation and appearing Co-Defendants. In essence, Mr. Cruz-Berrios is requesting

from this Honorable Court to grant a preliminary injunction enjoining Defendants until Plaintiff may be heard on the merits of his Complaint for a permanent injunction, alleging that he is being discriminated and subjected to cruel treatment and punishment by the Co-defendants and the Department of Correction and Rehabilitation.

In light of Plaintiff failure to exhaust administrative remedies before the filing of the instant complaint, this Honorable Court must GRANT the present Motion for Summary Judgment and Dismiss with prejudice the instant Complaint.

## II. FACTUAL BACKGROUND

1. Mr. Cruz-Berrios is an inmate under the custody of the DCR, incarcerated at the "Bayamon" 501 Correctional Institution. **(ECF no. 2** pg. 6 at 3.1**) (SUMF 1).**

2. Mr. Cruz has diabetes Mellitus, Type 2. **(ECF no. 2** pg. 14 at 4.1**) (SUMF 2)**.

3. Due to the condition, Mr. Cruz has a special medical diet low in sodium and of 2,2000 calories a day which includes snacks. **(ECF no. 2** pg. 14 at 4.1 and 4.3**) (SUMF 3)**.

4. In addition, Mr. Cruz has diabetic neuropathy. **(ECF no. 2** pg. 14 at 4.4**) (SUMF 4)**

5. Mr. Cruz alleges that he must receive five (5) doses of insulin divided in three (3) sections a day, via injection at the prisons medical ward. **(ECF no. 2** pg. 15 at 4.8**).**

6. Nevertheless, Mr. Cruz alleges that since October of the year 2015, he almost died in two occasions because co-defendants failed to provide him the insulin doses. **(ECF no. 2** pg. 15 at 4.6).

7. Due to afore-mention, Mr. Cruz alleges that he filed five (5) administrative remedies seeking that Dr. Quiles provide him with his daily doses of insulin, but that there was no avail.  **(ECF no. 2** pg. 17 at 4.18).

8. As a result, on December 16, 2016, Mr. Cruz filed the instant federal complaint alleging that he has not been receiving his daily insulin treatment and injections as ordered by his physicians. **(ECF no. 2)**

9. Furthermore, in the complaint Mr. Cruz alleges that Defendants have pursue and agenda of humiliating and harming him in order to cause him psychological damage and make him submissive. **(ECF no. 2** pg. 17 at 4.18).

10. On August 29, 2017, Dr. Ilia Torres Mojica, the Medical Services Corporate Director for Correctional Health Services Corp. provided this Honorable Court a certification[1] that detailed the medical treatments that were being followed for Mr. Cruz. (**ECF no. 32-1**, Exhibit 1 pg. 1-3; **SUMF 5).**

11. The Certification asserted that Mr. Cruz has received monthly monitoring and treatment for his medical conditions in the Bayamón Correctional Complex Chronic Conditions Clinics. (**ECF no. 32-1**, Exhibit 1 pg. 1 at 3; **SUMF 6)**

12. Furthermore, it certifies that Mr. Cruz is periodically followed in external clinics for medical services in endocrinology, gastroenterology, urology, podiatrist and psychiatrist. (**ECF no. 32-1**, Exhibit 1 pg. 1 at 4; **SUMF 7**).

13. The Certification also declares that Mr. Cruz receives medical treatment for his mental health conditions. (**ECF no. 32-1**, Exhibit 1 pg. 2 at 7; **SUMF 8)**

14. Further, it clarifies that Mr. Cruz has continuous access to medical services. (**ECF no. 32-1**, Exhibit 1 pg. 2 at 8; **SUMF 9**).

15. And, explains in detail how the administration of Mr. Cruz Berrios' insulin takes place (**ECF no. 32-1**, Exhibit 1 pg. 2-3 at 9-13; **SUMF 10)**

16. On the other hand, it also states that on August 31, 2017, Mr. Cruz rejected to submit himself to an appointment that was scheduled with a Podiatrist. **(ECF no. 34**, Exhibit 1 pg. 1; **SUMF 11)**

17. Anyhow, on May 13, 2019, Plaintiff filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (**ECF no. 75**). In support of his request, Plaintiff alleges: (1) Defendants were not administering Plaintiff the insulin treatment; (2)

---

[1] Exhibit #1

Defendants are not providing Plaintiff with a low sodium diet of 2,200 calories per day, including three fruit snacks, and (3) Plaintiff alleges that he needs a four-legged walker, needs to be taken to a podiatrist and receive treatment for Hepatitis C.

18. As a result, on May 17, 2019, Dra. Gladys Quiles Santiago, the Medical Services Director of Bayamón Correctional Complex, provided certification[2] to this Court that posited that in compliance with doctor orders, Mr. Cruz have been receiving medical treatment for his physical and mental conditions. (ECF no. 82, Exhibit 3 pg. 1 at 7; **SUMF 12).**

19. The certification also states that in many times Mr. Cruz has refused treatment and to follow his diet per his doctors' orders. (ECF no. 82, Exhibit 3 pg. 2 at 12). **(SUMF 13).**

20. The patient has a cane that assist him in walking and no other equipment was established has needed. (ECF no. 82, Exhibit 3 pg. 2 at 9; **SUMF 14).**

### III.   PROCEDURAL BACKGROUND

1. On December 16, 2016, Pro se Plaintiff José Cruz Berrios ("Cruz" or "Plaintiff"), filed the instant 42 U.S.C. § 1983 Complaint and request for injunctive relief against the appearing Defendants **(ECF no. 2)**.

2. On August 14, 2017, appearing defendants filed a *Notice of Automatic Stay of Proceedings Pursuant to the Commencement of Case Under Title III of PROMESA*. **(ECF no. 17).**

3. On August 15, 2017, the Court issued an order granting in part and denying in part the Notice of Automatic Stay, staying the request for monetary damages, but not so as to the request for injunctive relief.  **(ECF no. 19).**

4. After several events, on August 16, 2017, Defendants were ordered to file a motion addressing whether plaintiff was entitled to a Preliminary injunctive hearing. **(ECF no. 24 and 26).**

---

[2] Exhibit #2

5. Accordingly, on August 29, 2017, the Co-defendant Manuel Chiquilini, the Chief Executive Officer of Correctional Health Services Corporation ("CHSC") filed a *Motion in Compliance and in Opposition to Injunctive Relief Requested*. (**ECF no. 31**)

6. On August 31, 2017, the appearing Co-defendants filed a *Motion for Reconsideration of Order at ECF no. 19 and Motion in Compliance with order ECF no. 26*. The exhibit (**ECF no. 33-1**) –Certification-- included in appearing defendants' Motion detailed the medical services that were being provided to Plaintiff by CHSC and showed that these services were in fact in accordance with the prescribed medical treatment.

7. Thereafter, on November 29, 2018, Co-defendant Manuel Quilichini filed a *Motion to Dismiss Injunctive Relief for Lack of an Indispensable Party*. (**ECF No. 56**). Said Motion stated that CHSC was no longer the entity that administers the Health Program for the Puerto Rico Correctional System's prisons effective September 30th, 2018; and that, as of October 1st, 2018, *Physicians HMO* is the entity that administers said program. (**ECF no.56 p.4**). As such, Co-defendant stated that an indispensable party is missing for this Court to be able to adjudicate Plaintiff's request for injunctive relief.

8. On January 10, 2019 the Magistrate Judge assigned to the case issued a *Report and Recommendation* ("R&R") regarding the pending request for injunctive relief and the motion to dismiss at ECF no. 56. (**ECF no. 58**). The *R&R* asserted that for purposes of the injunctive relief requested, Physicians HMO is indeed an indispensable party that is not present in the complaint. Therefore, it conclude that to properly proceed on this matter, plaintiff, who is currently represented by counsel, would need to amend the complaint to include Physicians HMO as a defendant and file a motion for preliminary injunction against said entity, if the request for injunctive relief has not become moot.

9. On May 13, 2019, Plaintiff filed a *Motion for Temporary Restraining order and Preliminary Injunction* and included as a party Physicians HMO. (**ECF no. 75**).

10. On May 14, 2019, this Honorable Court issued an order whereby it denied the request for temporary restraining order and ordered Defendants to respond to the allegations presented in the motion no later than May 21, 2019. **(ECF no. 76)**.

11. On May 21, 2019, appearing Co-Defendants filed a *Response in Opposition to Motion for Preliminary Injunction*. **(ECF no. 82).** Attach as exhibit **(ECF no. 82-2)** were DCR's official documents that demonstrated that plaintiff did not exhaust administrative remedies. In addition, a Certification **(ECF no. 82-3)** detailing the medical services that were being provided to Plaintiff by Physician Correctional.

12. On June 13, 2019, this Honorable Court reassigned the case to the U.S. District Judge Raúl M. Arias-Marxuach. **(ECF no. 87)**.

13. On August 19, 2019, the Court issued an order. In said Order, the Court granted Plaintiff until September 9, 2019 to reply to Motion to Dismiss and Magistrate Judge's Report and recommendation. **(ECF no. 92)**.

14. On September 1, 2019, Counsel for Plaintiff requested an extension of time to comply with order at ECF no. 92. The Court granted Plaintiff's request for extension of time until September 30, 2019. **(ECF no. 93-94)**.

15. On October 1, 2019, Plaintiff filed a *Response in Opposition to Motion to Dismiss and in Compliance with order*. **(ECF no. 95)**.

16. On November 8, 2019, this Honorable Court issued and Opinion and Order. In said Opinion and Order, among other things, the Court sua sponte converted appearing Co-defendant's Response in Opposition to motion for Preliminary Injunction into a Motion for Summary Judgment and Granted Co-Defendants until November 29, 2019 to file a statement of uncontested facts and a memorandum of law. **(ECF no. 97)**.

### IV. STATEMENT OF UNCONTESTED FACTS

For a complete statement of uncontested facts relevant to the instant motion, the Court is respectfully referrer to Defendant's Statement of Uncontested Material Facts (SUMF). Defendants adopt by reference their SUMFs as if fully set forth herein.

## V.     LEGAL STANDARD

**A. Standard of review for a Motion for Summary Judgment**

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis added.) Fed. R. Civ. P. 56(a). Thus, summary judgment "allows courts and litigants to avoid full blown trial in unwinnable cases, conserving the parties' time and money, and permitting courts to husband scarce judicial resources." McCarthy v. Northwest Airlines, Inc., 56 F.3d 3313 (1st Cir. 1994). A dispute is 'genuine' only if it "is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). In turn, a fact is 'material' only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).

In other words, summary judgment does not admit room for determining credibility, or weighing of conflicting evidence similar to trial. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d at 684. "If the facts permit more than one

7

reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmoving party." Id at 684. Also, the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### B. Failure to Exhaust Administrative Remedies Warrant Dismissal of the Verified Complaint

Claims arising under the Prison Litigation Reform Act of 1995 ("PLRA") require exhaustion of administrative remedies prior to filing suit in court. Accordingly, under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See Jones v. Bock, 549 U.S. 199, 204 (2007) (citing 42 U.S.C. § 1997e(a)). The Court also held that "failure to exhaust is an affirmative defense under the PLRA," id. at 216, and as such, "defendant prison officials must specifically raise the failure to do so as a defense. If they do not, the defense may well be waived." Id.

With regards to Plaintiff's Section 1983 claim, the First Circuit has held that "[a] prisoner must exhaust administrative remedies before a complaint under § 1983 will be entertained even where the relief sought cannot be granted by the administrative process." See Johnson v. Thyng, 369 Fed.Appx. 144 at 147 (1st Cir.2010) (*quoting* Booth

8

v. Churner, 532 U.S. 731, 734, 121 S.Ct. 1819 (2001)).  Therefore, "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." López v. Ortiz, 2015 U.S. Dist. LEXIS 43643, *17-18, 2015 WL 1470566 (D.P.R. Mar. 31, 2015) (citing Woodford v. Ngo, 548 U.S. 81, 85 (2006) (exhaustion is required even if the relief sought –e.g. monetary—cannot be granted by the administrative process); see also Porter v. Nussle, 534 U.S. 516, 520 (2002) (finding that Section 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences, be it general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong).  Given the mandatory nature of the exhaustion requirement, proof of a plaintiff's failure to exhaust warrants dismissal of a plaintiff's complaint. See, e.g., Johnson v. Thyng, 369 Fed.Appx. 144 (1st Cir. 2010).  The Court also noted that **"[e]xhaustion is mandatory**," See Johnson, 369 Fed.Appx. at 146 (*quoting* Woodford v. Ngo, 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)), and "has a decidedly procedural emphasis." *Id.* (*quoting* Booth, 532 U.S. at 739).

**The "boundaries of proper exhaustion" in any given case are defined by the prison system's own procedural requirements—not by the PLRA itself—and are a question of law**. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).  Before you file a lawsuit you must try to resolve your complaint through the prison's grievance procedure.  If the prison provides a second or third step, like an appeal, then you must also take those steps. **Exhaustion requires filing a grievance and pursuing all available administrative appeals**. See White v. McGinnis, 131 F. 3d 593 (6th Cir. 1997). "A prisoner who files a complaint in federal court asserting **multiple claims against multiple prison officials based on multiple prison grievances** must

9

have **exhausted each claim** against **each defendant** in at least one of the grievances." See Abdul-Muhammad v. Kempker, 450 F3d350 (8th Cir.2006)

In Puerto Rico, any member of the correctional population seeking administrative remedies must comply with the grievance procedure established by Regulation 8583[3] (Rules VII to XV). **(SUMF 15).** Specifically, Rule VII of Regulation 8583 states:

> The member of the correctional population shall be responsible for filing the requests for remedies in a clear, concise, and honest manner, indicating the dates and **names of the people involved in the incident**. **Likewise, the member shall offer all information needed to resolve his or her claim effectively.** (Emphasis added.)

Once the request is duly filed, and the member of the correctional population is notified with a response to his/her claim, there are additional steps to be exhausted at the administrative level if the inmate disagrees with the response given. He or she may request reconsideration with the coordinator, within twenty (20) calendar days from the receipt of the notification of the response. (Regulation 8583, Rule XIV-1). After this, if the member of the correctional population continues to remain displeased with the coordinator of administrative remedies' resolution, he or she may request judicial review- Regulation 8583 Rule XV- before the Puerto Rico Court of Appeals, in compliance with the Section 4.02 of the Uniform Administrative Procedure Act, Section 4.2, Act. No. 170, August 12, 1988; P.R. Laws Ann. Tit. 3 2172. Furthermore, the member of the correctional population has to file a Certiorari with the Supreme Court of Puerto Rico, in order to exhaust all remedies available before filing a complaint in the Federal District Court. It is Plaintiff's obligation to have satisfied the PLRA's exhaustion requirement, if not, his case must be dismissed. See Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002).

---

[3] See Exhibit 3

10

"The defendant carries the burden of proving that the plaintiff failed to exhaust all available administrative remedies before filing suit." See Cruz-Berríos v. Oliver Baez, 792 F. Supp. 2d 224, 228 (D.P.R. 2011). To satisfy the burden, **the defendant must prove that: (1) administrative remedies were in fact available to the plaintiff, and (2) the plaintiff failed to exhaust them**. Id.

In the instant case, Mr. Cruz-Berrios failed to exhaust administrative remedies as to the facts alleged in his complaint. A certification issued by the Administrative Remedies Program of the Puerto Rico Administration of Corrections, dated November 13, 2019[4], reveals that plaintiff failed to exhaust administrative remedies by not filing a Reconsideration for any of his *Request for Administrative Remedy*. **(SUMF 16).**

Mr. Cruz-Berrios began the administrative grievance process in five (5) occasions with the *Request for Administrative Remedy*:

1. *Request for Administrative Remedy* Q-032-15, dated January 9th, 2015. **(SUMF 18).**
2. *Request for Administrative Remedy* B-2599-15, dated December 1st, 2015. **(SUMF 19).**
3. *Request for Administrative Remedy* B-860-17, dated June 8, 2017. **(SUMF 20).**
4. *Request for Administrative Remedy* B-687-17, dated May 3, 2017. **(SUMF 21).**
5. *Request for Administrative Remedy* B-686-17, dated May 3, 2017. **(SUMF 22).**

Plaintiff never filed a *Request for Reconsideration* for any of the five (5) *Requests for Administrative Remedy*. **(SUMF 16).** Consequently, Plaintiff did not seek judicial review before the Puerto Rico Court of Appeals, and ultimately to the Supreme Court of Puerto Rico[5], prior to the filing of this action. **(SUMF 17).** As such, Plaintiff fail to exhaust the administrative remedies, prior to the filing of this action.

---

[4] Exhibit #4
[5] Exhibit #5

Accordingly, Plaintiff failed to overcome the jurisdictional hurdle of the PLRA's exhaustion requirement for this type of action regarding prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. See Porter, *id*. Despite the available administrative remedies, Plaintiff failed to exhaust them before filing this lawsuit. In conclusion, the mandatory exhaustion of administrative remedies was not met with respect to the claim raised or the defendants named in this lawsuit. Thus, the dismissal of this case in its entirety is warranted by this Court.

### IV. THE REQUEST FOR PRELIMINARY INJUNCTION MUST BE DENIED FOR FAILING TO COMPLY WITH THE FOUR-PRONG INQUIRY.

#### A. Preliminary injunction standard

When determining whether to grant a preliminary injunction, the court evaluates four factors: "(1) the movant's probability of success on the merits, (2) the likelihood of irreparable harm absent preliminary injunctive relief, (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue, and (4) how the granting or denial of an injunction will interact with the public interest." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 8-9 (1st Cir. 2002) (citing Ross—Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id. (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

#### B. APPLICABLE LAW AND ANALYSIS

As previously mentioned in our *Memorandum in Response in Opposition* at ECF no. 82, to the extent that the Plaintiff did not exhaust the administrative remedies, it is unnecessary to discuss the four (4) factors mentioned above. Nonetheless, Plaintiff is

12

unsuccessful at the start of the four-part inquiry by failing to duly set forth that he is likely to succeed on the merits of his claims by showing that the DCR and Physicians HMO have failed to administer his medical treatment, failed to provide him with a low sodium and low calorie diet and denied him access to medical services, all of which caused a negative effects to his health.

With our memorandum at ECF no. 82, a Medical Certification, dated May 17, 2019 and signed by Dr. Gladys Quiles, the Director of Medical Services at Physician Correctional, was submitted. Said Certification revealed that Plaintiff has not been deprived of insulin or access to medical doctors and that it is plaintiff who has reneged to receive the dosage. In addition, the Certification also showed that Plaintiff's medical conditions were under proper management of the medical personnel of Physician and that he has been referred for outside professional medical care for certain medical conditions, when required by the medical personnel.

For purposes of the instant memorandum, Defendants requested an up-dated Medical Certification. This Medical Certification, dated November 21, 2019, was also signed by Dr. Gladys Quiles Santiago, the Medical Director at Physician Correctional.[6] The current certification reveals that Plaintiff continues to receive medical treatment and monitoring for his health conditions. **(SUMF 23).**

1. **Likelihood of Prevailing on The Merits**

    a.   Insulin intake

Mr. Cruz Berrios claims that Defendants are not administering the insulin treatment as ordered by his doctor.

Contrary to plaintiff allegations, Mr. Cruz Berrios's last appointment with the Endocrinologist was on October 3, 2019. The current treatment ordered is the following: Lantus 70 units sq at PM divided 35 u in two different areas of body, Vitamin D10000 3

---

[6] Exhibit #6

times a week, Glucerma 8oz po bid, Neurotin 800 t po tid, Levothyroxine 25 mcg t po q d, Losartan 100 t po q d, Hydrochlotiazide 25 mg t po q d, Jardiance 10 mg t po q d, Asprin 81 mg t po q d. This regimen has been followed by the doctors and nurse personnel in charge of the insulin administration. (See Medical Certification, Exhibit 6 ¶ 5 and 6). Mr. Cruz Berrios's next appointment with the Endocrinologist is on January 28, 2020. (See Medical Certification, Exhibit 6 ¶ 5).

Thus, the injunctive relief requested by Plaintiff, as to the insulin should be denied as he has not been able to establish any likelihood of success on the merits of such claim and, much less, any irreparable injury.

b.     Access to medical care

Plaintiff Mr. Cruz-Berrios alleges that despite his diabetic neuropathy condition, which affects his feet's and legs, he has never seen a podiatrist. (*Motion for Preliminary Injunction, at page 6*). Furthermore, Plaintiff alleges that he needs to receive treatment for Hepatitis C and a four-legged walker.

As to these allegations, Plaintiff receives monitoring and treatment for all his physical conditions with the facility internal medical doctor, the last appointment was on October 15, 2019 and has a scheduled an appointment for January 16, 2020. (See Medical Certification, Exhibit 6 ¶ 3). Moreover, Plaintiff has had many appointments with the podiatrist, but he has refused to attend these appointments. Plaintiff failed to attend the following appointments: August 31, 2017, January 18, 2018 and May 18, 2018. (See Medical Certification, Exhibit 2 ¶¶ 6).

Regarding the Hepatitis C treatment, Plaintiff was evaluated by a gastroenterologist on June 10, 2019 in order to establish if he is a candidate for treatment. Furthermore, he has scheduled a follow up appointment with the gastroenterology for November 27, 2019 for a colonoscopy. (See Medical Certification, Exhibit 6 at ¶ 5). Therefore, Defendants are making the necessary efforts to provide Plaintiff with the

14

necessary medical services requested by him, but the patient must collaborate. (See also Medical Certification, Exhibit 2 at ¶ 11).

With regard to the walker, at the moment, he has a cane that assists him in walking and it has not established by medical personnel the need for another type of equipment. (See Medical Certification, Exhibit 2 at ¶ 9).

Thus, the injunctive relief requested by Plaintiff should be denied as he cannot establish the likelihood of success on the merits of his claims or any irreparable injury.

### 2. Irreparable Harm

In order to prevail in a preliminary injunction request plaintiff must establish the existence of an irreparable injury and that no adequate remedy for the injury exists at law. An injury will only be considered irreparable if no adequate remedy for the injury exists at law. See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986).

The alleged deprivation of adequate conditions must be objectively serious, that is, the conditions of confinement must have deprived the plaintiff of "the minimal civilized measure of life's necessities." See Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392; see also, e.g., Farmer v. Brennan, 511 U.S. at 833–34, 114 S.Ct. 1970 (holding that deliberate indifference to a prisoner's substantial risk of serious harm at the hands of other inmates is unconstitutional); Hutto v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (holding that prolonged isolation in overcrowded, violent conditions without adequate food is unconstitutional); Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that deprivation of necessary medical treatment is unconstitutional). "The Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832 (1994).

In the instant case, Plaintiff is not being deprived of any of the services mentioned in his injunctive relief. Plaintiff, like every other inmate, has had continuous access to

medical services and receives monitoring and treatment for all his medical conditions by internal medicine doctors and external clinics, when required. Therefore, Plaintiff is not suffering an actual and imminent injury. In the absence of an injunction, Mr. Cruz-Berrios will not face an imminent danger to his health. As such, Plaintiff claims are unwarranted and should be dismissed.

### 3. Balance of Equities

Mr. Cruz-Berrios must show that issuing an injunction will burden the Defendants less than denying an injunction would burden him. The Defendants submit that the balance of hardships tilts in their favor. Mr. Cruz-Berrios has not shown there to be any danger to his health as a result of a denial of access to medical services or the lack of medical care. Furthermore, Defendants assert that Plaintiff will continue to receive the medical services that are in his best interest. Plaintiff has failed to outweigh any harm which granting preliminary injunctive relief would inflict upon the defendant, who are already providing the services and required medical care. Plaintiff will suffer no hardship if the injunction is not granted.

### 4. Public Interest Will or Will Not Be Adversely Affected By The Grant Of An Injunction

The case at bar, involves an important public policy interest; prison officials must ensure that the conditions of confinement, in and of themselves, do not impose an "unnecessary or wanton infliction of pain." See Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); see also Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that deprivation of necessary medical treatment is unconstitutional).

Lastly, to obtain an injunction, the plaintiff must demonstrate that issuing an injunction "will promote (or, at least, not denigrate) the public interest. Defendants posit

16

that Plaintiff has not satisfied the necessary steps for attaining an injunction. Plaintiff has not been deprived of medical treatment. Defendants are providing the medical services that are ordered by Plaintiff's doctors, as evidenced in the Medical Certifications hereby enclosed as Exhibits 2 and 6. As such, the public interest will be adversely affected if the preliminary injunctive relief is granted since he is requesting services or treatment he does not need or fails to cooperate in his treatment, as prescribed by his doctors. Prison officials are ensuring that Plaintiff be provided with the medical care needed for his medical condition, thus, no imposition of an "unnecessary or wanton infliction may be found. (See Medical Certification, Exhibit 2 at ¶ 12).

## V.     CONCLUSION AND PRAYER

In the case at bar, Plaintiff requests for administrative remedies within the Government of Puerto Rico's Department of Correction and Rehabilitation was not completed. As such, Plaintiff failed to address the issue, as establish in Regulation 8583. Consequently, he did not seek judicial review before the Puerto Rico Court of Appeals, and ultimately to the Supreme Court of Puerto Rico, prior to the filling of this action. All in all, Plaintiff failed to overcome the jurisdictional hurdle of complying with the PLRA's exhaustion requirement. In conclusion, mandatory exhaustion of administrative remedies was not met with respect to the claim raised in this lawsuit. Plaintiff also failed to properly plead his alleged entitlement to a preliminary injunction since the complaint is utterly devoid of a proper discussion of the above-stated fore-part inquiry in order for this Honorable Court to consider his request. Therefore, Plaintiff's request for a preliminary injunction failed to comply with the legal pleading standard required by law. In the alternative, plaintiff is not entitled to a preliminary injunction since he has failed to exhaust the administrative remedies as to the facts alleged in his complaint.

**WHEREFORE**, for the above-stated reasons, it is respectfully requested from this Honorable Court to GRANT the present *Motion for Summary Judgment* and DENY

plaintiff' *Motion for Preliminary Injunction*. (ECF no. 75) and DISMISS the instant case with prejudice.

**I HEREBY CERTIFY** that on this same date I have filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 27th day of November 2019.

| | |
|---|---|
| **DENNISE N. LONGO QUIÑONES**<br>Secretary of Justice<br><br>**WANDYMAR BURGOS VARGAS**<br>Deputy Secretary in Charge of Litigation<br><br>**SUSANA PEÑAGARÍCANO-BROWN**<br>Director of the Federal Litigation and Bankruptcy Division | *S/Melissa Massheder Torres*<br>**MELISSA MASSHEDER-TORRES**<br>USDC-PR NO. 302411<br>Department of Justice<br>Federal Litigation Division<br>P.O. Box 9020192<br>San Juan, PR 00902-0192<br>Office (787) 721-2900, Ext. 1412<br>Email: mmassheder@justicia.pr.gov |