IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE JULIAN CRUZ-BERRIOS,

    **Plaintiff,**

    v.

PUERTO RICO DEPARTMENT OF
CORRECTION AND REHABILITATION,
ET AL.,

    **Defendants.**

CIVIL NO. 16-3155 (RAM)

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Defendants' *Motion for Summary Judgment* (Docket No. 98). Plaintiff José Julián Cruz-Berrios subsequently filed an *Opposition to Motion for Summary Judgment* and Defendants replied. (Docket Nos. 112 & 115). Co-defendants Manuel Quilichini and Dr. Gladys Quiles' *Motion for Joinder* at Docket No. 100 is **GRANTED**. After considering the parties' submissions, the Court **GRANTS** Defendants' *Motion for Summary Judgment* for the reasons set below.

    I.    **PROCEDURAL BACKGROUND**

    Plaintiff José Julián Cruz-Berrios ("Plaintiff" or "Cruz-Berrios") is an inmate with Type-2 Diabetes Mellitus who resides at Puerto Rico Department of Corrections and Rehabilitation's ("PRDC") Institutional Complex #501 in Bayamón, Puerto Rico. On

December 16, 2016, he filed suit against several Defendants. (Docket No. 2 at ¶¶ 3.1, 4.1). Defendants include the Secretary of Corrections of the Commonwealth of Puerto Rico and other PRDC officials (collectively, "the Governmental Defendants") as well as Manuel Quilichini ("Quilichini") as Chief Executive Officer of Correctional Health Services Corp. ("CHSC"), the former contract provider of health services to PRDC's inmates, and Dr. Gladys Quiles ("Dr. Quiles"), a medical doctor working at Correctional facility #292 in Bayamón and acting on behalf of CHSC. Id. at ¶¶ 3.1-3.27. Neither the current contract provider, Physicians HMO, Inc. ("Physicians HMO"), nor Eric Rolón ("Rolón"), the current PRDC administrator, were joined in the *Complaint*.[1]

In his *Complaint*, Mr. Cruz-Berrios seeks declaratory injunctive relief and money damages. Id. ¶ 1.2.[2] He includes claims allegedly arising under 42 U.S.C. § 1983, the Americans with Disabilities Act, the United States Constitution and the Court's federal question subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Id. ¶ 2.1. The *Complaint* also invokes the Constitution and Laws of the Commonwealth of Puerto Rico and the

---

[1] Mr. Rolón and Physicians HMO d/b/a Grupo de Salud Correcional, first appeared as Defendants in the *Amended Motion for Temporary Restraining Order and Preliminary Injunction*. (Docket No. 75). Summons for both Defendants were issued on May 20, 2019. (Docket No. 81). However, the record reflects that the summons have yet to be returned, either executed or unexecuted.

[2] The money damages claims are stayed pursuant to the Puerto Rico Oversight Management and Economic Stability Act, PL 114-87. (Docket No. 19).

Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) over state law claims. Id. ¶ 2.6. Plaintiff posits that the situations in the *Complaint* are known to PRDC officials ranging from the Wardens and co-defendants working at Correctional Complexes #292, 448 and 501 up to PRDC's Secretary. (Id. ¶¶ 4.1, 4.57).

Defendants filed a *Motion to Dismiss Injunctive Relief for Lack of an Indispensable Party* ("Motion to Dismiss") on November 29, 2018. (Docket No. 56). On January 10, 2019, Magistrate Judge Hon. Marcos E. López issued a *Report and Recommendation* recommending denial of the same. (Docket No. 58). On May 13, 2019, Plaintiff filed an *Amended Motion for Temporary Restraining Order and Preliminary Injunction* ("*Amended Preliminary Injunction*") to prevent all Defendants from denying him medical care to treat his Type-2 diabetes, among other medical conditions, and to stop them from allegedly discriminating against him because of his diabetes. (Docket No. 75). The Governmental Defendants filed a "*Response in Opposition to 'Amended Motion for Temporary Restraining Order and For Preliminary Injunction (Dkt. 75)'*" ("*Response in Opposition*") requesting the Court to deny injunctive relief and dismiss the *Complaint* due to Plaintiff's failure to exhaust administrative remedies. (Docket No. 82). On October 1, 2019, Plaintiff stated in a *Motion in Compliance with Order and Notifying Absence From Jurisdiction* ("*Motion in Compliance*") that he joined Physicians HMO to the *Amended Preliminary Injunction* thus his Complaint was

no longer a missing indispensable party and requested more time to summon Physicians HMO and Mr. Rolón. (Docket No. 95).

On November 8, 2019, this Court at Docket No. 97 denied without prejudice the *Motion to Dismiss* (Docket No. 56), the *Amended Preliminary Injunction* (Docket No. 75) and the *Motion in Compliance* (Docket No. 95). The Court adopted the Magistrate Judge's *Report and Recommendation* and *sua sponte* converted the Governmental Defendants' *Response in Opposition* into a summary judgment motion. (Docket No. 97 at 18-19). The Court also granted the parties additional time to file the statement of facts, memorandum of law and any oppositions thereto. Id. On November 27, 2019, the Governmental Defendants filed the *Motion for Summary Judgment* ("*Motion for Summary Judgment*" or "*MSJ*") (Docket No. 98) accompanied by a *Statement of Uncontested Material Facts* ("SUMF"). (Docket No. 98-7). On December 2, 2019, co-defendants Quilichini and Dr. Quiles filed a *Motion for Joinder* to the MSJ. (Docket No. 100). Lastly, Plaintiff filed an *Opposition to Motion for Summary Judgment* ("Opposition") (Docket No. 112) which Governmental Defendants' countered with a *Reply to Plaintiff's Opposition to Motion for Summary Judgment* ("Reply"). (Docket No. 115).

## II. LEGAL STANDARD

Summary judgment is proper under Fed. R. Civ. P. 56(a) if a movant shows "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A dispute is genuine if the evidence "is such that a reasonable jury could resolve the point in the [non-movant's] favor." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 3d 344, 347 (D.P.R. 2018) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at *6 (D.P.R. 2020) (quotation omitted).

The movant "bears the burden of showing the absence of a genuine issue of material fact." United States Dep't of Agric. v. Morales-Quinones, 2020 WL 1126165, at *1 (D.P.R. 2020) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Next, the burden shifts to the non-movant to present at least one issue of fact which is genuine **and** material. Id. (quotation omitted). A non-movant must do this "through submissions of evidentiary quality," which show "that a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation omitted). Thus, while a court will draw all inferences in favor of the non-movant, summary judgment may be proper if their case solely relies on improbable inferences, conclusory allegations and unsupported speculation. See Burke Rozzetti v. Ford Motor Co., 2020 WL 704860, at *3 (D.P.R. 2020) (quotation omitted).

Local Rule 56 also governs summary judgment. See L. Civ. R. 56. Per this Rule, a non-movant must "admit, deny or qualify the

facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Moreover, "unless a fact is admitted, the reply shall support each denial or qualification by a record citation." Id. Local rules such as Rule 56, are "designed to function as a means of 'focusing a district court's attention on what is and what is not-genuinely controverted.'" Marcano-Martinez v. Cooperativa de Seguros Multiples de Puerto Rico, 2020 WL 603926, at *2 (D.P.R. 2020) (quotation omitted). Hence, "litigants ignore Local Rule 56 at their peril." Calderón Amézquita v. Vicens, 2019 WL 3928703, at *1 (D.P.R. 2019) (citation omitted).

### III. FINDINGS OF FACT

In general, Plaintiffs admitted or qualified the SUMF's facts. (Docket No. 112-1). However, Plaintiff's responses to Fact Nos. 6-15 were general denials stating, "Defendant's statement number __ is neither denied, nor admitted for lack of information, however it is irrelevant to the Summary Judgment" or "Defendant's statement number __ is neither denied, nor admitted for it is a legal conclusion." (Docket No. 112-1 ¶¶ 6-15). Responses which "do not **oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it**" are insufficient to properly controvert a material fact. *See* Aztar Corp. v. N.Y. Entertainment, LLC, 15 F.Supp.2d 252, 254 n. 1

(E.D.N.Y. 1998), aff'd. 210 F.3d 354 (2d Cir. 2000) (noting that responses only averring a "lack of knowledge or information sufficient to either admit or deny [a fact]" did not create an issue of fact.) Thus, Facts Nos. 6-15 are deemed admitted.

Therefore, **crediting only material facts in the SUMF** that are **properly supported by a record citation and uncontroverted**, the Court makes the following findings of facts:

1. Mr. Cruz Berrios is an inmate under the custody of the PRDC, incarcerated at the "Bayamon" 501 Correctional Institute. (Docket No. 98-7 ¶ 1).

2. Mr. Cruz has diabetes Mellitus, Type 2. (Id. ¶ 2).

3. Mr. Cruz has a special diet low in sodium and of 2,200 calories a day which includes snacks. (Id. ¶ 3).

4. In addition, Mr. Cruz has diabetic neuropathy. (Id. ¶ 4).

5. On August 29, 2017, Dr. Ilia Torres Mojica, the Medical Services Corporate Director for Correctional Health Services Corp. provided a certification that detailed the medical treatments followed for Mr. Cruz. (Id. ¶ 5).

6. Mr. Cruz has received monthly monitoring and treatment for his medical conditions in the Bayamón Correctional Complex Chronic Conditions Clinics. (Id. ¶ 6).

7. Mr. Cruz receives periodical follow-ups in external clinics for medical services in endocrinology, gastroenterology, urology, podiatrist and psychiatrist. (Id. ¶ 7).

8. Mr. Cruz also receives medical treatment for his mental health conditions. (Id. ¶ 8).

9. Mr. Cruz has continuous access to medical services. (Id. ¶ 9).

10. The insulin was administrated to Mr. Cruz per his doctor's ordered [sic]. (Id. ¶ 10).

11. On May 17, 2019, Dra. Gladys Quiles Santiago, the Medical Services Director of Bayamón Correctional Complex, certified that in compliance with doctor orders, Mr. Cruz has been receiving medical treatment for his physical and mental conditions. (Id. ¶ 12).

12. Mr. Cruz in many occasions has refused medical treatment and to follow the medical diet per his doctors' orders. (Id. ¶ 13).

13. The patient has a cane that assist [sic] him in walking and no other equipment was established as needed. (Id. ¶ 14).

14. In Puerto Rico, any member of the correctional population seeking administrative remedies must comply with the grievance procedure established by Regulation 8583 (Rules VII to XV). (Id. ¶ 15).

15. Mr. Cruz-Berrios began the administrative grievance process in five (5) occasions with a Request for Administrative Remedy, nevertheless, in none of those requests he filed a Request for Reconsideration. (Id. ¶ 16).

16. Plaintiff did not seek judicial review before the Supreme Court of Puerto Rico, prior to the filling of this action. (Id. ¶ 17).

17. On January 9th, 2015, Mr. Cruz filed Request for Administrative Remedy number Q-032- 15. (Id. ¶ 18).

18. On December 1st, 2015, Mr. Cruz filed Request for Administrative Remedy number B2599-15. (Id. ¶ 19).

19. On June 8, 2017, Mr. Cruz filed Request for Administrative Remedy number B-860-17. (Id. ¶ 20).

20. On May 3, 2017, Mr. Cruz filed Request for Administrative Remedy number B-687-17. (Id. ¶ 21).

21. On May 3, 2017, Mr. Cruz filed Request for Administrative Remedy number B-686-17. (Id. ¶22).

22. The Medical certification signed by Dr. Gladys Quiles Santiago, the Medical Director at Physician Correctional, dated November 21, 2019, shows that Plaintiff currently continues to receive medical treatment and monitoring for his health conditions. (Id. ¶ 23).

## IV. DISCUSSION

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), mandates that administrative remedies be exhausted **before** an inmate can file suit in federal court. This seeks to "eliminate unwarranted interference by federal courts with the administration of prisons and affords corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Negrón-Cruz v. Almodovar, 2020 WL 762217, at *1 (D.P.R. 2020) (quotation omitted). Specifically, the statute provides that **"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law,** by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted."** 42 U.S.C. § 1997e(a) (emphasis added). Exhaustion must occur even if the available remedies fail to meet federal standards or if they are not "plain, speedy, and effective." Porter v. Nussle, 534 U.S. 516, 524 (2002). Indeed, the First Circuit has stated that "[a] prisoner must exhaust administrative remedies before a complaint under § 1983 will be entertained even where the relief sought cannot be granted by the

administrative process." Johnson v. Thyng, 369 F. App'x 144, 147 (1st Cir. 2010) (quotation omitted). For example, even if the prison administrative process does not cover monetary relief, the inmate still must complete the administrative process. *See* Booth v. Churner, 532 U.S. 731, 735 (2001).

The Supreme Court has ruled that "failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, this does not mean that prisoners are excused from complying with aspects of the administrative grievance process, such as deadlines. Rather, compliance with grievance procedures "is all that is required by the PLRA to 'properly exhaust.'" Vazquez-Marin v. Diaz-Colon, 2013 WL 6417488, at *3 (D.P.R. 2013) (quoting Jones, 549 U.S. at 218).

Moreover, proper exhaustion of administrative remedies is not defined by the PLRA, "but by the prison grievance procedures." Jones, 549 U.S. at 217. Therefore, the scope of Mr. Cruz-Berrios' duty to exhaust administrative remedies is determined by the PRDC's regulations to which this Court "must look." Arroyo-Morales v. Administracion de Correccion, 207 F.Supp.3d 148, 151 (2016). The PRDC's Regulation No. 8583 titled "Regulation to Address the Application for Administrative Remedies Filed by Members of the Correctional Population" ("Regulation No. 8583") details the grievance procedure for PRDC inmates under custody. (Docket No.

98-3, Rules XII-XV). These steps generally include: 1) filing a request for administrative remedies; 2) if displeased with response, filing a reconsideration within twenty (20) days after receipt of response with the regional coordinator; and 3) if still displeased with coordinator's response, requesting judicial review before the Puerto Rico Court of Appeals. Id. After seeking judicial review at the Court of Appeals, an inmate must then file a *Certiorari* with the Supreme Court of Puerto Rico, to finally exhaust all administrative remedies, **before** filing in federal court. (Docket No. 98 at 10).[3] If an inmate fails to pursue even one of these steps, **he has failed "to exhaust his administrative steps fully, as required by the PLRA**." Arroyo-Morales, 207 F.Supp.3d at 152 (citation omitted)(emphasis added); *see also*, Figueroa-Vazquez v. Departamento de Correccion Y Rehabilitacion de Puerto Rico, 2020 WL 710608, at *3–4 (D.P.R. 2020) (dismissing an inmate's claims since he did not file a reconsideration of his request nor did he comply with the final step of the exhaustion requirement, which was seeking judicial review of the Department's determinations).

---

[3] A certification issued by the Chief Deputy Clerk of the Supreme Court of Puerto Rico shows that Plaintiff did not file in the Supreme Court of Puerto Rico any action after 2014 relating to the administrative complaints at issue in this case. (Docket No. 98-5). This Certification is self-authenticating under Fed. R. Evid. 902(1). *See* Pagán-Porratta v. Municipality of Guaynabo, 2019 WL 4055133, at *6 n.7 (D.P.R. 2019) (holding as self-authenticating under Fed. R. Evid. 902(1) a certification on "Autonomous Municipality of Guaynabo Human Resources Office" letterhead, bearing the Municipality's seal and containing the Office Director's signature).

In the case at bar, Plaintiff admitted in his *Opposition* that it is "completely clear" that he began the grievance process on five (5) occasions by filing a *Request for Administrative Remedy* ("Request"). (Docket No. 112 at 4; Docket No. 112-1 ¶¶ 18-22). These five requests were: (1) Request No. Q-032-15 dated January 9th, 2015; (2) Request No. B-2599-15 dated December 1st, 2015; (3) Request No. B-860-17 dated June 8, 2017; (4) Request No. B-687-17 filed on May 3, 2017; and, (5) Request No. B-686-17 filed on May 3, 2017. (Docket No. 98-7 ¶¶ 18-22). Defendants noted that per Regulation No. 8583, Plaintiff had twenty (20) days from receipt of notification of a response to his request to file a reconsideration of the same with a coordinator. (Docket No. 98 at 10; Docket No. 98-4 at 14, Rule XIV-1). **Only after filing a reconsideration, could an inmate request judicial review**.

The evidence in the record on summary judgment shows that Plaintiff failed to file a reconsideration for any of the above-mentioned requests. (Docket No. 98-4 at 1-2, certified English translation at Docket No. 106-1 at 1-2). Moreover, Plaintiff did not provide any evidence to contradict this in his *Opposition*. Rather, he solely stated that he was not "currently adding new documents [to the record], since Plaintiff lacks plenty of the related evidence that proof [sic] the tenths of times he has exhausted administrative remedies, and the only evidence Cruz has at hand are the ones already provided and admitted by Defendant at

Docket No. 98-4." (Docket No. 112 at 4). He also insists that he "exhausted administrative remedies, however the institution failed to comply with its own Regulations," as they only allegedly notified Plaintiff of the outcome of his requests on November 13, 2019, two (2) years after Plaintiff initiated the administrative remedies process. Id. at 5-6. This, in contravention of Rule XIII-4 which states that an evaluator should provide a response in writing to the correctional population with twenty (20) days after he submits his response of administrative action. Id. at 5.

A review of the record shows that only three of the Requests were notified in an untimely manner on November 13, 2019: Request No. B-860-17,[4] Request No. B-687-17,[5] and Request No. B-686-17.[6] (Docket No. 115 at 2) (citing Docket No. 98-4 at 3-4, English translation at 106-1 at 3-4). In his *Opposition*, Plaintiff averred that at the date of the Certification stating that no reconsideration had been filed, the time for Plaintiff to file a reconsideration "had not even started." (Docket No. 112 at 6).

---

[4] The *Certification of Administrative Remedies* ("*Certification*") shows that the answer to the request by the corresponding area was received, presumably by the evaluator, on June 28, 2017. (Docket No. 106 at 4). Evaluator attempted to deliver answer to Plaintiff twice, but Plaintiff did not respond to evaluator's call. Id.

[5] The *Certification* shows that the answer to the request by the corresponding area was received, presumably by the evaluator, on May 22, 2017; on May 26, 2017, the evaluator "attempted to deliver the answer [to Plaintiff], but he [Plaintiff] did not answer the call at the section." Id.

[6] The *Certification* shows that an answer by the evaluator to the request was issued to Plaintiff on June 6, 2017. The evaluator attempted twice to deliver the response receipt to Plaintiff on May 10 and on May 26, 2017, but Plaintiff did not answer the call at the section. Id.

While Plaintiff is correct that the twenty-day reconsideration clock did not begin to run until the day when he was notified of the response to those three requests, as Defendants explained in their *Reply*, Plaintiff nonetheless had until December 3, 2019 to file his reconsiderations. (Docket No. 115 at 2). The record shows that even if Defendants notified the response outside of the timeframe required by Regulation No. 8583, Plaintiff did not file a reconsideration within the twenty days after he was notified of the responses.

The other two requests were answered and notified to Plaintiff on a timely basis. (Docket No. 115 at 2). For example, Request No. Q-032-15 was answered by the corresponding area on January 15, 2015, while a response receipt was delivered to Plaintiff on January 27, 2015. (Docket No. 106 at 3). Whereas Request No. B-2599-15, was answered on December 17, 2015, with a response receipt delivered to Plaintiff on December 21, 2015. Id. at 4. Plaintiff likewise failed to file a Reconsideration for either of those requests. Id. at 3-4; Docket No. 115 at 2.

As Plaintiff failed to file a reconsideration for any of his requests, he failed to exhaust administrative remedies readily available to him. "In other words, by pursuing only some of the steps available and not appealing any of the decisions issued as part of the grievance procedure, Plaintiff failed to exhaust the administrative remedies available to him." Figueroa-Vazquez, 2020

WL 7710608, at *3 (quoting Torres-Vega v. Administración De Corrección, 2015 WL 3720250, at *4 (D.P.R. 2015)). The U.S. Supreme Court has cautioned that "[p]roper exhaustion **demands compliances with an agency's deadlines** […] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. NGO, 548 U.S. 81, 90-91 (2006) (emphasis ours). This case is not the first time Cruz-Berrios' claims have been dismissed for failure to exhaust administrative remedies. *See* Cruz Berrios v. Oliver-Baez, 792 F. Supp.2d 224 (D.P.R. 2011).

### V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' *Motion for Summary Judgment* (Docket No. 98) **dismissing with prejudice** all of Plaintiff's claims as to all Defendants. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of March 2020.

                                          S/ RAÚL M. ARIAS-MARXUACH
                                          United States District Judge